No. 2023-1653

## IN THE UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

DOE NO. 1

Plaintiff-Appellee,

v.

THE UNITED STATES OF AMERICA,

Defendant-Appellant.

APPEAL FROM THE UNITED STATES COURT OF FEDERAL CLAIMS, in No. 19-1747C

Judge Schwartz

### [CORRECTED] APPELLEE'S BRIEF

Michael P. Ellement
Daniel M. Rosenthal
Charlotte H. Schwartz
James & Hoffman, P.C.
1629 K Street, NW, Suite 1050
Washington, DC 20006
Telephone: 202-496-0500
mpellement@jamhoff.com
dmrosenthal@jamhoff.com
chschwartz@jamhoff.com

Linda Lipsett
Bernstein & Lispett, P.C.
1629 K Street, NW, Suite 1050
Telephone: 202-296-1798
chouse@bernsteinlipsett.com

Attorneys for the Plaintiff-Appellee

December 11, 2023

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## <u>CERTIFICATE OF INTEREST</u>

| | |
|---|---|
| **Case Number** | 23-1653 |
| **Short Case Caption** | Doe No. 1 v. US |
| **Filing Party/Entity** | Doe No. 1 |

---

**Instructions:**

1. Complete each section of the form and select none or N/A if appropriate.

2. Please enter only one item per box; attach additional pages as needed, and check the box to indicate such pages are attached.

3. In answering Sections 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.

4. Please do not duplicate entries within Section 5.

5. Counsel must file an amended Certificate of Interest within seven days after any information on this form changes.  Fed. Cir. R. 47.4(c).

---

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 12/11/2023

Signature:  /s/ Michael Ellement

Name:  Michael Ellement

| 1. Represented Entities. Fed. Cir. R. 47.4(a)(1). | 2. Real Party in Interest. Fed. Cir. R. 47.4(a)(2). | 3. Parent Corporations and Stockholders. Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.<br><br>☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.<br><br>☑ None/Not Applicable |
| Doe No. 1 | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐    Additional pages attached

FORM 9. Certificate of Interest

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☐ None/Not Applicable          ☐ Additional pages attached

| | | |
|---|---|---|
| Jules Bernstein | | |
| Michael Bernstein | | |
| | | |

**5. Related Cases.** Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

☐ Yes (file separate notice; see below)   ☑ No   ☐ N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b). **Please do not duplicate information.** This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal. Fed. Cir. R. 47.5(b).

**6. Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑ None/Not Applicable          ☐ Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |

# <u>TABLE OF CONTENTS</u>

STATEMENT OF RELATED CASES ....................................................................1

INTRODUCTION ...............................................................................................2

STATEMENT OF THE ISSUE ............................................................................3

STATEMENT OF THE CASE..............................................................................3

I.     Statutory and Regulatory Background ...........................................................3

       A.     Fair Labor Standards Act ....................................................................3

       B.     Government Employee Training Act ...................................................4

       C.     The Department of Labor's regulations regarding compensation for training.............................................................................................5

       D.     The extension of the FLSA to federal government employees............6

       E.     OPM's regulations and guidance .......................................................7

       F.     Timeline of relevant statutes and regulatory documents ...................10

II.    Factual Background....................................................................................11

III.   Procedural history ....................................................................................13

SUMMARY OF ARGUMENT .........................................................................13

ARGUMENT ..................................................................................................16

I.     *Billings* governs this appeal ......................................................................16

II.    OPM's regulation fails the second *Billings* prong because it conflicts with the corresponding DOL regulation without justification .............................19

       A. Section 551.423(a)(3) deviates significantly from DOL regulations .................................................................................19

i

B.  The Government's justification is contrary to OPM's stated rationale for the regulation ............................................................23

C.  GETA and FEPCA do not justify Section 551.423(a)(3) ..............26

D.  The Government's justification does not satisfy *Billings* ..............29

III.    OPM's regulation is not reasonable .........................................................32

IV.    If the Court upholds OPM's training regulation, it should vacate and remand ...........................................................................................................40

CONCLUSION ...................................................................................................41

CERTIFICATE OF COMPLIANCE .......................................................................42

# TABLE OF AUTHORITIES

**Cases**

*Am. Fed'n of Gov't Emps v. Off. of Pers. Mgmt.*, 821 F.2d 761 (D.C. Cir. 1987) ...... ................................................................................................................16

*Apple Inc. v. Qualcomm Inc.*, 17 F.4th 1131 (Fed. Cir. 2021) ................................18

*Ballou v. General Elec. Co.*, 433 F.2d 109 (1st Cir. 1970) ....................................39

*Bienkowski v. Northeastern Univ.*, 285 F.3d 138 (1st Cir. 2002) ....................38, 39

*Billings v. United States*, 322 F.3d 1328 (Fed. Cir. 2003) ...............................*passim*

*Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156 (1962) .......................25

*Chao v. Tradesmen Int'l, Inc.*, 310 F.3d 904 (6th Cir. 2002) ...........................38, 39

*Delizo v. Ability Works Rehab Servs., LLC*, No. 19-10237, 2020 BL 254917 (E.D. Mich. July 9, 2020) ..................................................................................................34

*Edge Sys. LLC v. Aguila*, 635 F. App'x. 897 (Fed. Cir. 2015) ...............................17

*Farmer v. Ottawa Cnty.*, 211 F.3d 1268 (table), 2000 WL 420698 (6th Cir. 2000) ... ................................................................................................................22

*Fowler v. Incor*, 279 F. App'x. 590 (10th Cir. 2008) .............................................34

*Golden Bridge Tech., Inc. v. Nokia, Inc.*, 527 F.3d 1318 (Fed. Cir. 2008) .............17

*Greene v. Cnty. of Essex*, No. 23-572, 2023 BL 198085 (D.N.J. June 9, 2023) ......... ................................................................................................................34

*Harbourt v. PPE Casino Resorts Md., LLC*, 820 F.3d 655(4th Cir. 2016) ................ ................................................................................................................34, 38

*Hawkins v. Securitas Sec. Servs. USA, Inc.*, No. 09 C 3633., 2013 BL 83035 (N.D. Ill. Mar. 28, 2013) ..................................................................................................34

*IBP, Inc. v. Alvarez*, 546 U.S. 21 (2005) ...................................................................4

*In re Hounsfield*, 699 F.2d 1320 (Fed. Cir. 1983) ...................................25

*McLaughlin v. Ensley*, 877 F.2d 1207 (4th Cir. 1989) .......................34, 38

*Montoya v. CRST Expedited, Inc.*, 404 F. Supp. 3d 364 (D. Mass. 2019) .............34

*Moreau v. Klevenhagen*, 956 F.2d 516 (5th Cir. 1992), *aff'd*, 508 U.S. 22 (1993) ....
...................................................................34

*Reich v. Parker Fire Prot. Dist.*, 992 F.2d 1023 (10th Cir. 1993) .........................22

*Robert Bosch, LLC v. Pylon Mfg. Corp.*, 719 F.3d 1305 (Fed. Cir. 2013).............19

*Senne v. Kan. City Royals Baseball Corp.*, 591 F. Supp. 3d 453 (N.D. Cal. 2022)....
...................................................................34

*SKF USA Inc. v. United States*, 254 F.3d 1022 (Fed. Cir. 2001) .....................25, 26

*Tenn. Coal, Iron & R.R. v. Muscoda Local 123*, 321 U.S. 590 (1944) ....................4

*United States v. Williams*, 553 U.S. 285 (2008) .......................................40

*Walling v. Portland Terminal Co.*, 330 U.S. 148 (1947)................................*passim*

*Zumerling v. Devine*, 769 F.2d 745 (Fed. Cir. 1985)................................16

## Statutes and Regulations

5 C.F.R. § 410.402(d) ...............................................27, 29

5 C.F.R. § 551.208 ...................................................8

5 C.F.R. § 551.421 ...................................................22

5 C.F.R. § 551.423 ...................................................10

5 C.F.R. § 551.423(a)(2).............................................28, 35

5 C.F.R. § 551.423(a)(3)..........................................*passim*

5 C.F.R. § 551.501(a)...............................................27

5 C.F.R. § 610.102 ................................................................23

5 C.F.R. § 610.111 ................................................................23

5 C.F.R. § 610.111(1)(2) ........................................................23

29 C.F.R. § 541.301 ................................................................8

29 C.F.R. § 551.423(a)(3) .......................................................20

29 C.F.R. § 785.27 ...........................................................*passim*

29 C.F.R. § 785.27(b) ............................................................20

29 C.F.R. § 785.31 ..................................................................6

29 C.F.R. § 785.32 .......................................................6, 20, 39

29 U.S.C. § 203(e)(2)(A) ..........................................................6

29 U.S.C. § 204(f) ...................................................................7

29 U.S.C. § 207(a) ...............................................................3, 27

29 U.S.C. § 785.27(b) ............................................................20

29 U.S.C. § 785.27(c) ............................................................20

5 U.S.C. § 5542(c) .................................................................26

5 U.S.C. § 5542(a) .................................................................27

26 Fed. Reg. 190 (Jan. 11, 1961) .............................................5, 6

45 Fed. Reg. 85659 (Dec. 30, 1980) ...................................9, 24, 25

64 Fed. Reg. 69165 (Dec. 10, 1999) ...........................................27

Pub. L. No. 85-507, 72 Stat. 327 (1958) .......................................4

Pub. L. No. 93-259, § 6(a)(6) (1974) ...........................................7

Pub. L. No. 101-509, § 529, 104 Stat. 1421 (1990) .......................23

Pub. L. No. 102-378, § 2(41)(B), 106 Stat. 1346 (1992) ..................2

**Other Authorities**

H.R. Rep. No. 93-913 (1974), *reprinted in* 1974 U.S.C.C.A.N. 2811 ......................7

## STATEMENT OF RELATED CASES

This case has not been previously before this Court or any other appellate court.

# INTRODUCTION

This interlocutory appeal concerns the validity of a regulation issued by the Office of Personnel Management (OPM) at 5 C.F.R. § 551.423(a)(3). The regulation governs whether employees of the federal government who are covered by the Fair Labor Standards Act (FLSA) receive overtime pay when they attend "entry level training."

The FLSA guarantees that employees receive pay for each hour of overtime work. Yet, under the challenged regulation, a federal government employee can be required to attend a full-time training program at a government training facility; be instructed to participate in official training activities during evenings and weekends; but receive no pay for time spent on those mandatory training activities. In allowing such unpaid work, OPM's regulation departs from the longstanding interpretation of the FLSA issued by the Department of Labor in 1961.

In this case, the Government relied on the challenged regulation to seek summary judgment—prior to discovery—against Plaintiff's claim for overtime compensation during a training program. The trial court denied summary judgment. Applying this Court's decision in *Billings v. United States*, 322 F.3d 1328 (Fed. Cir. 2003), the trial court ruled that the Government could not rely on 5 C.F.R. § 551.423(a)(3) because it unjustifiably conflicts with the corresponding Department of Labor regulations.

This Court should affirm. The Government has failed to justify OPM's restrictive rule for overtime compensation during entry level training. In attempting to defend Section 551.423(a)(3), the Government offers a justification that is contrary to OPM's stated rationale for adopting the regulation. Further, the Government misconstrues the statutes on which it relies and misapplies *Billings*.

## STATEMENT OF THE ISSUE

Whether 5 C.F.R. § 551.423(a)(3), as applied to "entry level training," is valid under *Billings v. United States*, 322 F.3d 1328 (Fed. Cir. 2003).

## STATEMENT OF THE CASE

**I.    Statutory and Regulatory Background**

**A.    Fair Labor Standards Act**

Congress enacted the Fair Labor Standards Act in 1938. As relevant here, the Act commands that "no employer shall employ any of his employees . . . for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a).

Six years after the enactment of the statute, the Supreme Court held that compensable work includes any "physical or mental exertion (whether burdensome or not) controlled or required by the employer and pursued necessarily and

primarily for the benefit of the employer and his business." *Tenn. Coal, Iron & R.R. v. Muscoda Local 123*, 321 U.S. 590, 598 & n.11 (1944).[1]

Three years later, the Supreme Court added that the statute "covers trainees, beginners, apprentices, or learners if they are employed to work for an employer for compensation." *Walling v. Portland Terminal Co.*, 330 U.S. 148, 151 (1947). The Court held that "prospective yard brakemen" attending a training course were performing "work in the kind of activities covered by the Act," but were not entitled to compensation because they were not "employees" of defendant at the time of the training. *Id.* at 150, 153.

### B. Government Employee Training Act

Congress enacted the Government Employee Training Act (GETA) in 1958. Under GETA, federal government agencies were required for the first time to establish training programs for their employees. Pub. L. No. 85-507, 72 Stat. 327 at §§ 2, 7–8 (1958).

Agencies were authorized to "pay all or any part of the salary . . . of each employee of each department who is selected and assigned for training," and to reimburse training-related costs such as travel and books. *Id.* at § 10.

---

[1]     A later statute, the Portal-to-Portal Act, provides that certain preliminary and postliminary activities are non-compensable under the FLSA, but does not otherwise alter the meaning of "work" under the FLSA. *IBP, Inc. v. Alvarez*, 546 U.S. 21, 28 (2005).

However, the authorization to pay employees "exclud[ed] overtime . . . pay." *Id.* In other words, GETA authorized payment of trainees' regular salaries, but not payment for overtime work during training.

### C.    The Department of Labor's regulations regarding compensation for training

In 1961, the Department of Labor issued regulations governing compensation for "attendance at lectures, meetings, training programs, and similar activities." *See* 26 Fed. Reg. 190, 193 (Jan. 11, 1961). As of today, those regulations remain in force. 29 C.F.R. § 785.27 *et seq.*

DOL's regulations provide that, despite the FLSA's applicability to "trainees, beginners, apprentices, [and] learners," *Walling,* 330 US at 151, employers need not compensate employees for training when four criteria are met:

- The attendance takes place "outside of the employee's regular working hours";

- The attendance is "voluntary";

- The program is "not directly related to the employee's job"; and

- The employee "does not perform any productive work" during the program.

29 C.F.R. § 785.27.

All four criteria must be satisfied for an employer to avoid paying an employee for training. *Id.* In other words, if any single criteria is satisfied, the employee must receive pay. *Id.*

The regulation sets forth two additional exceptions to compensation. First, employers need not compensate "[v]oluntary attendance" at a "program of instruction which corresponds to courses offered by independent bona fide institutions of learning." *See* 26 Fed. Reg. 190, 194 (Jan. 11, 1961); 29 C.F.R. § 785.31. Second, in certain situations, employees need not be compensated for attendance at a "bona fide apprentice program[]" proceeding under a "written apprenticeship agreement or program which substantially meets the fundamental standards of the Bureau of Apprenticeship and Training of the U.S. Department of Labor." *See* 26 Fed. Reg. at 194 (Jan. 11, 1961); 29 C.F.R. § 785.32.

### D.    The extension of the FLSA to federal government employees

In 1974, Congress extended the FLSA to the federal government as an employer. *See* 29 U.S.C. § 203(e)(2)(A). In doing so, Congress did not establish any separate rules for the federal government, but simply changed the statute's definition of "employee" to include "any individual employed by the Government of the United States… in any executive agency." *Id*.

Under the 1974 legislation, "the Civil Service Commission is authorized to administer the provisions of [the FLSA] with respect to any individual employed

by the United States." Pub. L. No. 93-259, § 6(a)(6) (1974). Eventually, the Civil Service Commission was replaced by OPM, and the statute was amended to refer to OPM. *See* 29 U.S.C. § 204(f).

Congress "instructed" the Civil Service Commission to "administer the provisions of the [Fair Labor Standards Act] in such a manner as to assure consistency with the meaning, scope, and application established by the rulings, regulations, interpretations, and opinions of the Secretary of Labor which are applicable in other sectors of the economy." *Billings*, 322 F.3d at 1333 (citing and quoting Fair Labor Standards Amendments of 1974, H.R. Rep. No. 93-913, at 28 (1974), *reprinted in* 1974 U.S.C.C.A.N. 2811 (hereinafter "House Report")) (alteration in original). Any preexisting rules governing pay for federal government employees would continue to apply "to the extent that they were not inconsistent with the Fair Labor Standards Act." *Id.*

### E.    OPM's regulations and guidance

After Congress extended the FLSA to the federal government in 1974, the Civil Service Commission began administering the Act for federal government employees. As noted above, the Civil Service Commission was later replaced by OPM. To simplify, we use "OPM" to refer to both entities in this brief.

OPM has issued regulations regarding overtime pay under the FLSA. Many of those regulations closely resemble DOL's regulations under the FLSA.

*Compare, e.g.*, 5 C.F.R. § 551.208 *with* 29 C.F.R. § 541.301 (OPM and DOL regulations using nearly identical language to define the exemption for learned professionals).

As to the issue of training under the FLSA, OPM initially concluded that the "prohibit[ion] of . . . overtime pay" in GETA "applied to overtime pay under the FLSA"—in other words, that federal employees would not receive FLSA overtime pay while attending training. Appx979 (FPM Letter 551-17). That determination was set forth in a guidance letter issued on August 29, 1974.[2] *Id.*

But in 1981, OPM "rescind[ed]" its prior guidance and "reversed" its original conclusion. *Id.* OPM decided to take these actions upon "reexamination" of the issue, and after applying a "better understanding of the differences between Title 5 and the FLSA." *Id.*

Under OPM's revised position, "the two laws," GETA and the FLSA, "are to be administered separately and independently, with nonexempt employees being paid under whichever law provides them the greater overtime pay benefit." *Id.* In other words, federal employees should receive pay for training if provided by the FLSA, without regard to GETA.

---

[2]     The 1974 guidance letter is not in the record. However, it is described in a 1981 guidance letter that is in the record. Appx979. We draw from the 1981 letter here.

8

OPM issued formal regulations reflecting its revised position on compensation for training under the FLSA, which took effect in 1981. *See* 45 Fed. Reg. 85659, 85659–66 (Dec. 30, 1980) (reprinted at Appx970-Appx977). In its commentary on those regulations, OPM reaffirmed that "the two laws are to be administered separately and independently." *See* 45 Fed. Reg. at 85659, 85661 (Dec. 30, 1980) (Appx972). OPM further explained that its new regulation was intended to "bring OPM's administration of the FLSA into line with that of the Department of Labor in the private sector and will produce consistency in OPM's administration of the Act." *Id.* Nothing in the administrative record suggests that OPM viewed GETA as limiting employees' rights to overtime pay under the FLSA or that OPM was otherwise attempting to reconcile GETA with the FLSA. *Id.*

OPM's regulations included the provision at issue in this case, 5 C.F.R. § 551.423(a)(3), which provides:

> Time spent in apprenticeship or other entry level training, or internship or other career related work study training, or training under the Veterans Recruitment Act (5 CFR part 307) outside regular working hours shall not be considered hours of work, provided no productive work is performed during such periods, except as provided by § 410.402(b) of this chapter and paragraphs (f) and (g) of § 551.401.[3]

---

[3]     Neither party has argued that 5 C.F.R. § 410.402(b) or 5 C.F.R. § 551.401(f) or (g) are relevant to this case or the issue presented for appeal, so we do not discuss them in the remainder of this brief.

9

**F.    Timeline of relevant statutes and regulatory documents**

We provide the following timeline to summarize the relevant statutes and

regulatory documents:

| Statutes | Regulatory documents |
|---|---|
| 1938: Enactment of Fair Labor Standards Act (FLSA), requiring covered employers to pay covered employees for overtime work | |
| 1958: Enactment of Government Employee Training Act (GETA), directing federal agencies to establish training programs and authorizing payment of salary (but not overtime) to trainees | |
| | 1961: Issuance of DOL's regulations regarding compensation for training under the FLSA, 29 C.F.R. § 785.27 *et seq* |
| 1974: FLSA extended to federal government employees through amendment to definition of "employee" | |
| | 1974: Civil Service Commission (predecessor to OPM) interprets GETA to bar payment for overtime during training even for employees covered by the FLSA |
| | 1981: OPM announces that it has reversed its 1974 determination and decided to administer the FLSA "separately and independently" from GETA |
| | 1981: Effective date of 5 C.F.R. § 551.423 |

## II.    Factual Background

Plaintiff has worked for the federal government since 2011. Appx773. She first worked as an Administrative Specialist at the FBI, then became an Investigative Analyst at another federal government agency, then returned to the FBI as an Investigative Specialist in 2015. Appx773.

In 2018, Plaintiff transferred to the role of FBI Investigative Analyst. Appx773. The FBI issued a "Notification of Personnel Action," effective January 7, 2018, identifying Plaintiff's new title as "Investigative Analyst." Appx711; Appx440. Her "Tenure" was listed as "Permanent." Appx711; Appx440. Her "Duty Station" was listed as Quantico, Virginia. Appx711; Appx440.

On the same day, January 7, 2018, Plaintiff began the FBI Basic Field Training Course ("Course") at the FBI Training Academy in Quantico, Virginia. Appx448; Appx774.

Created by the FBI in 2015, the Course spans twelve weeks. Appx288, Appx291, Appx502. All new Intelligence Analysts are required to attend and pass the Course. Appx501.

The FBI maintains strict control over trainees. All trainees live in a "dorm room with a roommate on campus."[4] Appx775. Trainees may not "travel off

---

[4]    Basic Field Training Course, May 2022, https://fbijobs.gov/sites/default/files/fbi-guide-bftc.pdf, at page 7 (Perma Link at https://perma.cc/5P4N-GFMG). *See also* Appx638.

campus" until after the third week of the course.[5]  Throughout the entire course, moreover, trainees are subject to a midnight curfew from Sunday to Thursday.[6] Trainees must remain in uniform from 8:00 am to 5:00 pm, and their dress and appearance are tightly restricted even outside of that time.[7] Trainees are "continuously evaluated by staff." Appx502.

Plaintiff perceived the Course as "highly sophisticated and advanced." Appx776. Though she had attended several prior government training programs, Plaintiff found the Course "significantly more advanced . . . as it focused on highly specialized law enforcement techniques and emphasized the unique job duties of an FBI IA [Investigative Analyst]." Appx774

When Plaintiff attended the course, scheduled training sessions occurred "each weekday (including after normal work hours) and on some weekend days." Appx776. Outside of scheduled training sessions, Plaintiff "was required to study materials, work on team projects, write reports and other training documents, prepare briefings, and prepare for and perform interviews." Appx776. Yet, Plaintiff "received no pay whatsoever for many of the hours that [she] worked," and when

---

[5]       *Id.*

[6]       *Id.*

[7]       Basic Field Training Course, May 2022, https://fbijobs.gov/sites/default/files/fbi-guide-bftc.pdf, at page 5, 7 (Perma Link at https://perma.cc/5P4N-GFMG). *See also* Appx638, Appx640.

she was paid, she "often did not receive pay at the appropriate time and a half overtime rate." Appx776.

The Government characterizes Plaintiff's claim as relating only to activities "outside of regularly scheduled training sessions." Def. Br. at 1, 5. That is incorrect, and nothing in the record supports it. Plaintiffs' complaint encompasses all unpaid overtime work, including work within and outside regularly scheduled training sessions. Appx26.

## III.    Procedural history

Plaintiff filed this suit in November 2019. In February 2020, the Government moved to dismiss, relying on 5 C.F.R. § 551.423(a)(3) and arguing that the Course was entry level training under that regulation. The Government later converted its motion to a motion for summary judgment, and the parties submitted new briefs on summary judgment, followed by supplemental briefs in response to an order from the trial court. In July 2022, the Court denied summary judgment, finding that the Government could not rely on 5 C.F.R. § 551.423(a)(3) under *Billings*. Appx15, Appx20-Appx22.

## <u>SUMMARY OF ARGUMENT</u>

In *Billings v. United States,* 322 F.3d 1328 (Fed. Cir. 2003), this Court applied a two-part test to evaluate a regulation issued by OPM in its capacity administering the FLSA for the federal government. The two questions under

*Billings* are (1) whether the regulation represents a "reasonable interpretation of the FLSA" and (2) whether any "difference between OPM's interpretation and Labor Department standard is required to effectuate the consistency of application of the provision to both federal and non-federal employees." *Id.* at 1334.

This Court should apply *Billings.* It is binding and squarely applicable here.

The trial court correctly held that Section 551.423(a)(3) fails under the second prong of *Billings.* Under that prong, the Court considers whether OPM has impermissibly deviated from DOL's interpretation of the FLSA. Here, OPM has deviated significantly from DOL's approach to compensation during training. The DOL regulations broadly grant compensation for time attending employer-required training, without applying any special limits to entry level training. By contrast, the OPM regulations prohibit most overtime pay during entry level training.

To justify OPM's more restrictive approach, the Government contends that OPM was attempting to balance competing commands of the FLSA and two other statutes, the Federal Employee Pay Comparability Act (FEPCA) and Government Employment Training Act (GETA).

But the Government's argument is contrary to OPM's actual rationale for issuing Section 551.423(a)(3), as reflected in the Federal Register and agency documents. No part of the administrative record supports the Government's current justification for the regulation. FEPCA was not even enacted until nine years *after*

14

OPM issued Section 551.423(a)(3). As for GETA, the administrative record shows that the agency decided to administer the FLSA "separately and independently" from GETA—precisely the opposite of what the Government now claims.

In any event, the statutes cited by the Government do not justify a deviation from DOL's approach to compensation for training.

Finally, even accepting the Government's post-hoc rationale for Section 551.423(a)(3), the regulation does not promote "consistency of application of the provision to both federal and non-federal employees," as required by *Billings*. Instead, the Government tries to justify the *inconsistency* created by OPM's rule through unpersuasive references to other statutes.

Even if the Government could explain OPM's deviation from DOL's regulations, Section 551.423(a)(3) would still fail the first prong of *Billings*. The rule does not constitute a "reasonable interpretation of the FLSA." *See Billings*, 322 F.3d at 1334. Nothing in the text of the FLSA, or in any authoritative precedent, supports treating entry level training as a distinct category in which employees have limited entitlement to overtime pay.

In sum, this Court should affirm the trial court's well-reasoned conclusion that 5 C.F.R. § 551.423(a)(3) cannot be sustained under *Billings*.

## **ARGUMENT**

### I. *Billings* **governs this appeal.**

In *Billings v. United States*, this Court considered a challenge to an OPM regulation defining the FLSA exemption for "executive" employees. 322 F.3d 1328, 1330 (Fed. Cir. 2003). The plaintiffs urged the Court to invalidate the regulation because it "conflict[ed] with the comparable Department of Labor . . . standard." *Id.* This Court applied a two-part test to assess that challenge: "[W]e must first determine whether the OPM interpretation of the statute is reasonable, as well as whether any difference between OPM's interpretation and the Labor Department standard is required to effectuate the consistency of application of the provision to both federal and non-federal employees." *Id.* at 1334.

In establishing that test, the Court relied on legislative history indicating that OPM should generally follow the interpretations of the Department of Labor. *See supra* at 6–7. The Court also relied on a prior Federal Circuit decision holding that OPM's interpretations of the FLSA must "harmonize[] with the statute's origin and purpose, . . . as well as with the Secretary of Labor's regulations." *Zumerling v. Devine*, 769 F.2d 745, 750 (Fed. Cir. 1985). In addition, the Court cited a D.C. Circuit opinion that similarly required consistency between DOL's and OPM's regulations, while noting that the D.C. Circuit's decision was not binding. *Am.*

*Fed'n of Gov't Emps v. Off. of Pers. Mgmt.*, 821 F.2d 761, 770 (D.C. Cir. 1987) (vacating an OPM regulation due to inconsistency with DOL regulations).

This Court should apply the test set forth in *Billings* to resolve this appeal. This case presents the same type of question resolved in *Billings:* whether an OPM regulation is valid despite differences between that regulation and the corresponding DOL regulations.

In its brief, the Government nevertheless tries to avoid application of *Billings*. First, the Government suggests that it is "not clear" whether *Billings* applies to this case. Def. Br. at 8. But this argument has been waived. It was not made to the trial court in either the Government's original or supplemental briefing. *See generally* Appx443-Appx467, Appx851-Appx874, Appx959-Appx968. And on appeal, the Government raises it in only a paragraph with barely any legal citation. Consequently, the Court should not consider it. *See, e.g., Golden Bridge Tech., Inc. v. Nokia, Inc.*, 527 F.3d 1318, 1322 (Fed. Cir. 2008) ("Our precedent generally counsels against entertaining arguments not presented to the district court."); *Edge Sys. LLC v. Aguila*, 635 F. App'x. 897, 908 (Fed. Cir. 2015) (holding that a party waives an argument when it does not "advance developed argument . . . [or] cite to legal precedent").

On appeal, the Government now posits that *Billings* may not apply when the alleged conflict is between an OPM regulation and a DOL "interpretive rule," as

opposed to a DOL "legislative rule[]." Def. Br. at 8. This Court does not lightly

disregard binding precedent, even when a party points to a "nuance" not

"specifically address[ed]" in an earlier decision. *Apple Inc. v. Qualcomm Inc.*, 17

F.4th 1131, 1136 (Fed. Cir. 2021) (internal quotation marks, alterations omitted).

But in this case, *Billings* expressly refutes the Government's argument. The

opinion speaks generally of conflicts between "OPM's interpretation and the Labor

Department standard," without distinguishing between legislative and interpretive

rules. *Billings*, 322 F.3d at 1334. Further, the *Billings* Court relied on legislative

history indicating that OPM should follow the "rulings, regulations,

*interpretations,* and opinions of the Secretary of Labor." *Id.* at 1333 (quoting

House Report at 28) (emphasis added). Accordingly, *Billings* applies to

interpretive rules.

Next, without asking the Court to overturn *Billings,* the Government

criticizes the reasoning of the decision in the final pages of its brief. Def. Br. at 16–

19. The Government asserts that the only question is whether the OPM regulation

is "reasonable," implying that the Court should ignore the second prong of

*Billings.* Def. Br. at 16. The Government goes so far as to point to a pre-*Billings*

decision of the Court of Federal Claims as providing the "proper[]" test for

comparing DOL and OPM regulations. Def. Br. at 18–19.

Again, the Government's new challenge to *Billings* is waived because it was not raised in the trial court. And even if the Government had not waived the issue, *Billings* is binding on the panel. *See, e.g., Robert Bosch, LLC v. Pylon Mfg. Corp.*, 719 F.3d 1305, 1316–17 (Fed. Cir. 2013) (en banc) ("Panel opinions are, of course, opinions of the court and may only be changed by the court sitting en banc."). If the Government seeks *en banc* review and the Court grants such review, Plaintiff is prepared to show that *Billings* is well-grounded in principles of administrative law and should be reaffirmed.

## II.     OPM's regulation fails the second *Billings* prong because it conflicts with the corresponding DOL regulation without justification.

The trial court held that Section 551.423(a)(3) failed to satisfy the second prong of *Billings*: "whether any difference between OPM's interpretation and the Labor Department standard is required to effectuate the consistency of application of the provision to both federal and non-federal employees." 322 F.3d at 1334. This Court should affirm that conclusion.

### A.     Section 551.423(a)(3) deviates significantly from DOL regulations.

The Government does not dispute that there is a difference between the OPM and DOL regulations on training. The DOL regulations contain no special rules for entry level training. Rather, the primary DOL training regulation, 29 C.F.R. § 785.27, applies uniformly to all "lectures, meetings, training programs and similar activities." Moreover, that rule broadly grants compensation for

training, unless four different conditions are met. *See id.* For example, the DOL regulation requires compensation for any training that is not "voluntary." 29 C.F.R. § 785.27(b).

By contrast, Section 551.423(a)(3) treats entry level training as a distinct category in which overtime pay is tightly limited. Under that regulation, an employee attending entry level training receives no pay for work "outside regular working hours," unless the trainee is performing "productive work." 5 C.F.R. § 551.423(a)(3). It does not matter if an entry level training is voluntary or related to the employee's job, two of the mandatory criteria in the DOL regulation. *Compare* 29 C.F.R. § 551.423(a)(3) *with* 29 U.S.C. § 785.27(b) & 29 U.S.C. § 785.27(c).

The closest analog to Section 551.423(a)(3) in the DOL regulations is DOL's provision addressing "related, supplemental instruction by employees working under bona fide apprenticeship programs." 29 C.F.R. § 785.32. The OPM regulation at issue here also references apprenticeship programs. *See* 5 C.F.R. § 551.423(a)(3). However, the OPM regulation goes on to include all "entry level trainings," an indisputably broader category not referenced in the DOL regulation.[8]

To summarize, "DOL's exceptions" to compensation for training are "distinctly narrower than the OPM exception." Appx17. Putting apprenticeships

---

[8]     Plaintiff does not challenge 5 C.F.R. § 551.423(a)(3) as it applies to instruction during apprenticeship programs. The Government has never argued that Plaintiff's attendance at the train course was pursuant to an apprenticeship.

aside, the DOL regulation generally awards compensation for all time attending a training that is involuntary or job-related. 29 C.F.R. § 785.27. Meanwhile, the OPM regulation denies all compensation for attending "entry level training," except for time during regular working hours or performing productive work.

The Government nevertheless portrays OPM's deviation as insubstantial. The Government suggests that, even under the OPM regulation, trainees will often be entitled to pay under the "productive work" clause of Section 551.423(a)(3). Def. Br. at 15. In particular, the Government asserts that "non-productive activities" are only a "narrow category." *Id.*

Yet, the Government does not explain that assertion or cite any evidence for it. And case law disproves the Government's characterization. For one thing, it appears that *no* case has ever found that a training involved "productive work" under Section 551.423(a)(3). Nor does the record reveal a single instance of the Government conceding that a training program included "productive work."

Under DOL's regulations, courts have found that "productive work" may occur during on-the-job training in which attendees perform the regular duties of the job under supervision. For instance, a police officer performed "productive work" when attending an "on-the-job patrol training" in which he:

> performed all of the regular duties of a road patrol deputy including but not limited to patrolling, issuing citations, making arrests, taking complaints, responding to accident scenes, performing field sobriety tests, transporting prisoners, testifying, seeking arrest warrants, executing arrest warrants,

making and filing proper reports when required and as necessary relating to the foregoing activities as well as any other duties normally performed by a road patrol deputy during the ordinary course of business.

*See Farmer v. Ottawa Cnty.*, 211 F.3d 1268 (table), 2000 WL 420698 (6th Cir. 2000). Importantly, the trainee in *Farmer* "had already served as a patrol officer," which "contributed to his productivity" during the training. *Id. See also Reich v. Parker Fire Prot. Dist.*, 992 F.2d 1023, 1028 (10th Cir. 1993) (concluding that "productive work" occurs "when the employers' training consists merely of supervising trainees as they carry out employees' duties").

Here, however, the Government offers no evidence that many federal government trainings fall into this category, *i.e.,* on-the-job trainings in which the trainee performs the regular duties of the job under supervision. Thus, the "productive work" clause does not materially expand employees' right to overtime pay under Section 551.423(a)(3).

The Government has also noted that Section 551.423(a)(3) provides compensation for work during "regular working hours." However, under the DOL regulations, trainees are entitled to pay for activities *outside* of regular working hours, unless the training is voluntary and unrelated to the employee's job. 29 C.F.R. § 785.27. Again, there is a substantial difference between the regulations.[9]

---

[9]     Overtime work often falls outside "regular working hours." "[R]egular working hours" are "the days and hours of an employee's regularly scheduled administrative work week." 5 C.F.R. § 551.421. The head of each agency has the

In short, OPM's "entry level training" exclusion is broad. Unlike DOL regulations, OPM regulations deny pay for most overtime work during entry-level training. The question under *Billings* is whether that difference "is required to effectuate the consistency of application of the provision to both federal and non-federal employees." 322 F.3d at 1334.

### B.   The Government's justification is contrary to OPM's stated rationale for the regulation.

To justify Section 551.423(a)(3), the Government claims that OPM issued that regulation because it was "limited by another statute," GETA, and "circumscribed by" yet another statute, FEPCA. Def. Br. at 10.

As a threshold matter, the Government's argument should be rejected because it is inconsistent with OPM's actual rationale for the regulation.

First, as to FEPCA, that statute was enacted in 1990—a decade *after* OPM issued Section 551.423(a)(3). *See* Pub. L. No. 101-509, § 529, 104 Stat. 1421 (1990). Obviously, then, OPM did not consider FEPCA when issuing the challenged regulation.

---

discretion to establish "administrative work weeks." 5 C.F.R. § 610.111. Overtime work could potentially become part of the administrative work week if it were "scheduled in advance of an administrative work week under an agency's procedures for establishing workweeks." 5 C.F.R. § 610.102 (defining "Regularly scheduled work"); *see also* 5 C.F.R. § 610.111(1)(2) (noting that "regular overtime work" may be part of the workweek). However, that result would be contingent on agency procedures and timing, such as whether a task is assigned before or after the start of the week.

As to GETA, the Government now claims that Section 551.423(a)(3) arises from GETA's "presumption of non-compensability for . . . entry level training activities." Def. Br. at 13.

But the Government's argument is contrary to OPM's contemporaneous rationale for Section 551.423(a)(3). When OPM issued the regulation, it announced that it was "revers[ing]" its earlier conclusion that GETA limited overtime pay under the FLSA. Appx979. It further stated that the FLSA and GETA must be applied "separately and independently." *Id.* The Government's current argument—that OPM was attempting to reconcile GETA with the FLSA—is the opposite of "separate[] and independent[]" administration.

OPM also said in 1981 that its regulation was intended to "bring OPM's administration of the FLSA in line with that of the Department of Labor in the private sector." 45 Fed. Reg. at 85661 (reprinted at Appx972). Here, though, the Government says that OPM was forced by GETA to deviate from the DOL's interpretation of the FLSA. Again, the Government's current argument is at odds with OPM's explanation for the regulation. In short, "Defendant cannot retroactively justify Section 551.423(a)(3) as a departure from DOL's approach when it initially promulgated the regulation to be consistent with DOL's." Appx19-Appx20.

The Government now suggests that, when the Government issued the regulation at issue here, it was "[e]xercising its independent statutory authorities to administer *both*" the FLSA and GETA. Def. Br. at 13 (emphasis added). But OPM said no such thing when it issued Section 551.423(a)(3). Rather, OPM stated that it was issuing regulations for "administration of the Act," referring solely to the FLSA. 45 Fed. Reg. at 85660 (reprinted at Appx971). And the agency said that it was implementing the FLSA "separately and independently" from Title 5 of the U.S. Code, which includes GETA. 45 Fed. Reg. at 85661 (reprinted at Appx972).

Strikingly, the Government's brief to this Court does not acknowledge—let alone attempt to justify—the difference between its current argument and OPM's stated rationale for issuing Section 551.423(a)(3).

This inconsistency is fatal to the Government's argument. "The courts may not accept appellate counsel's post hoc rationalizations for agency action." *Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 168 (1962). Thus, when the Government seeks to defend agency action "on grounds not previously articulated by the agency," this Court "generally decline[s] to consider the agency's new justification." *SKF USA Inc. v. United States*, 254 F.3d 1022, 1028 (Fed. Cir. 2001); *accord In re Hounsfield*, 699 F.2d 1320, 1324 (Fed. Cir. 1983) ("We review the Board's decision on the basis of what the Board said, not on the basis of counsel's theory concerning what the Board really meant.").

Here, when OPM issued Section 551.423(a)(3), it did not rely on the

arguments now presented by the Government. This Court should thus "decline to

consider" the "new justification." *See SKF USA Inc.*, 254 F.3d at 1028.

### C.    GETA and FEPCA do not justify Section 551.423(a)(3).

Even if the Court entertains the Government post-hoc justification for

OPM's regulation, that justification is unpersuasive.

As to FEPCA, the Government misconstrues that statute. The specific

provision cited by the Government, 5 U.S.C. § 5542(c), provides as follows:

> Subsection (a) [establishing general rules for overtime pay] shall not apply
> to an employee who is subject to the overtime pay provisions of section 7 of
> the Fair labor Standards Act of 1938. In the case of an employee who would,
> were it not for the preceding sentence, be subject to this section, the Office
> of Personnel Management shall by regulation prescribe what hours shall be
> deemed to be hours of work and what hours of work shall be deemed to be
> overtime hours for the purpose of such section 7 *so as to ensure that no
> employee receives less pay by reason of the preceding sentence.*[10]

(emphasis added).

In other words, while Section (a) establishes overtime pay rules for FLSA-

exempt employees, Section (c) provides that employees "subject to . . . the

[FLSA]" should not receive any "less pay by reason of" their exclusion from

---

[10]    While the Government suggests that this language was enacted as part of
FEPCA, it was included in a statute passed two years after FEPCA. *See* Pub. L.
No. 102-378, 2(41)(B), 106 Stat. 1346 (Technical and Miscellaneous Civil Service
Amendments Act of 1992). However, that difference is not relevant to the analysis
of the provision.

Section (a). As an example, Section (a) provides that overtime work occurs when a person works "in excess of 40 hours" in a week *or* "in excess of 8 hours in a day." 5 U.S.C. § 5542(a). This is more generous than the FLSA rule that overtime work occurs only when a person works more than 40 hours in a week. 29 U.S.C. § 207(a). Consequently, Section (c) directs OPM to ensure that FLSA-covered employees also receive the benefit of the 8-hour clause, and OPM has issued a regulation to that effect. *See* 5 C.F.R. § 551.501(a).

This rule does not justify OPM's training regulation. As the trial court observed, "[t]he language Defendant cites . . . was not a delegation of authority to depart from DOL's interpretations, but a direction to treat civil service protections as a floor when applying FLSA." Appx20. In fact, the challenged regulation does the opposite of what FEPCA requires. Rather than protect FLSA-covered employees from a loss of overtime pay resulting from their non-exempt status, it restricts their overtime pay.

The Government indicates that, in response to FEPCA, OPM "amended its training regulations." Def. Br. at 12. It is unclear what the Government is referring to. The language cited by the Government, 5 C.F.R. § 410.402(d), first appeared in the Federal Register in 1999, nine years after the passage of FEPCA. *See* 64 Fed. Reg. 69165, 69172 (Dec. 10, 1999). OPM's commentary when issuing that language does not mention FEPCA at all. *See id.* at 69167–68. Rather, it states that

OPM was seeking to resolve a separate inconsistency in its regulations. *Id.* But in any event, this regulation is not pertinent to Section 551.423.

As to GETA, the Government indicates that the statute creates a "presumption of non-compensability for . . . entry level training activities." Def. Br. at 13.

Not so. To start, GETA does not distinguish between entry level training and other training. The statute thus does not support OPM's special treatment of entry level trainings in Section 551.423(a)(3). *See* Appx18.

To be sure, GETA excluded overtime pay when it authorized agencies to pay employees for attending training. But 16 years after the passage of GETA, Congress extended the FLSA to federal government employees. *See supra* at 6–7. In doing so, Congress required federal agencies to pay overtime to covered employees in accordance with the FLSA.

OPM recognized this in 1981. When it issued its training regulations, it established that federal employees would sometimes receive overtime pay during training, notwithstanding GETA. For example, there is no question that an FLSA-covered federal employee is entitled to overtime pay during non-entry level training in the circumstances set forth in 5 C.F.R. § 551.423(a)(2).

In issuing those regulations, OPM expressly rescinded and reversed its earlier conclusion that GETA limits overtime pay under the FLSA. *See supra* at 8.

The agency announced that the FLSA must be administered separately and independently from GETA. *See supra* at 8–9.

As of today, OPM regulations continue to recognize that GETA does not limit employees' FLSA rights. OPM's regulation at 5 C.F.R. § 410.402 implements GETA's general prohibition on agencies' use of funds to pay employees for overtime work during training. But subsection (d) announces that the prohibition is "not applicable for the purpose of paying FLSA overtime pay." 5 C.F.R. § 410.402(d). In short, OPM "provided that GETA — including the prohibition on overtime for training — does not apply to federal employees covered by FLSA." Appx18.

Thus, governing regulations continue to recognize what OPM announced in 1981: GETA does not restrict FLSA overtime pay. Accordingly, GETA does not justify the restriction in Section 551.423(a)(3).

## D.    The Government's justification does not satisfy *Billings*.

Even setting aside the problems described above, the Government's justification fails because it does not advance "consistency of application of the provision to both federal and non-federal employees," as required by *Billings*, 322 F.2d at 1334. Rather, as the Government admits, Section 551.423(a)(3) undermines consistency between federal and non-federal employees.

The facts of *Billings* provide a helpful illustration of this requirement. There, OPM had adopted a rule defining the FLSA exemption for "executive" employees. *Id.* at 1331. The OPM regulation was "nearly identical" to its DOL analog, except that it omitted DOL's "salary basis test." *Id.* at 1334. The DOL "salary basis test" stated that employees could only be treated as exempt if they were paid a predetermined amount on a regular basis, not subject to reduction. *Id.* at 1330.

This Court explained in *Billings* that application of DOL's salary basis test to federal government employees would produce an absurd result: "nearly every federal employee would be considered non-exempt." *Id.* at 1334. That is because federal government employees were subject to pay deductions that were inconsistent with DOL's salary basis test. *Id.*

Accordingly, OPM's omission of the salary basis test was necessary to avoid an extreme inconsistency between the application of FLSA in the private sector and federal government, in which employees could perform similar work in the two realms but be treated as exempt in the private sector and non-exempt in the federal government.

Here, the Government offers no similar justification for the OPM rule. The Government does not claim, for instance, that application of the DOL regulation to federal government employees would create a disparity between federal and non-federal employees. Nor does the Government identify any factual difference

30

between training offered by federal government agencies as compared to state and local agencies or private employers.

In short, the Government does not even attempt to argue that Section 551.423(a)(3) satisfies the *Billings* requirement of consistency between the public and private sectors. Instead, the regulation promotes inconsistency. Under DOL regulations, private sector employees can often receive pay for entry level training, even if the training includes no productive work and even for tasks outside of regular working hours. *See* 29 C.F.R. § 785.27. Unlike their private sector counterparts, federal government employees receive no such pay under Section 551.423(a)(3).

\* \* \*

To sum up, Section 551.423(a)(3) fails to meet the second *Billings* prong for three main reasons: (1) The Government's proffered justification contradicts OPM's contemporaneous rationale for the regulation; (2) Neither FEPCA nor GETA justify any limit on compensation for overtime work during entry level training; and (3) The Government does not show that OPM's regulation advances "consistency of application of the provision to both federal and non-federal employees," as required by *Billings*, 322 F.2d at 1334.

31

## III.    OPM's regulation is not reasonable.

If the Court were to conclude that the Government has adequately justified

OPM's departure from DOL regulations, the Court should then assess whether

Section 551.423(a)(3) constitutes a reasonable interpretation of the FLSA. *Billings*,

322 F.3d at 1334. It does not. Nothing in the text of the FLSA or case law supports

treating "entry level training" as a distinct category in which employees' access to

overtime pay is limited.[11]

We start with common ground among all agencies and courts who have

considered the issue: employees' attendance at training is compensable work in at

least some circumstances, even when no "productive work" is performed and the

training occurs outside regular working hours.

This principle goes back to *Walling* in 1947. There, the Supreme Court held

that "the Act covers trainees, beginners, apprentices, or learners if they are

employed to work for an employer for compensation." *Walling,* 330 U.S. at 150.

The Court further explained that prospective yard brakemen in that case were

performing "work in the kind of activities covered by the Act." *Walling,* 330 U.S.

at 150. Specifically, the trainees "learn[ed] routine activities by observation, then

---

[11]    Because the trial court resolved the motion on the second *Billings* factor, it
did not assess the regulation's reasonableness, although it commented that
OPM's interpretation "*could* be reasonable, at least in the abstract." Appx17
(emphasis added). This Court's review is de novo and thus may address both
factors.

"gradually" performed "actual work under close supervision," but did "not displace any of the regular employees" and did not "expedite the company business"; rather, they "impede[d] and retard[ed] it." *Id.* at 149–50.

In finding that this type of work was "covered by the Act," the Court cited the statutory provision stating that "learners" may be paid less than minimum wage if the employer receives a "special certificate[]" granted by the Secretary of Labor. *Id.* at 151; 29 U.S.C. § 214. In the absence of such a certificate, the Court reasoned, any trainee who is employed must be paid in accordance with the ordinary provisions of the FLSA. *Id.* at 151–52.

To be sure, the Court concluded that the trainees in that case were not entitled to overtime compensation, but solely because they were not "employees" at the time of the training. *Id.* at 152–53. That holding does not apply in the current case because Plaintiff and other Course attendees were indisputably employees of the federal government when they attended training. *See supra* at 11. By contrast, the Court described the plaintiffs in *Walling* as "applicants" who merely joined "a pool of qualified workmen" upon completion of the course. *Id.* at 150. In general, the Court explained, the definition of "employee" does not extend to people "who, without any express or implied compensation agreement, might work for their own advantage on the premises of another." *Id.* at 152.

33

Since *Walling,* courts have often recognized that employees may be entitled to compensation for training, including trainings that would likely be categorized as "entry level." *See, e.g., Harbourt v. PPE Casino Resorts Md., LLC*, 820 F.3d 655, 660 (4th Cir. 2016) (reversing dismissal of FLSA claim brought by trainees at a "dealer school" held by a casino); *McLaughlin v. Ensley*, 877 F.2d 1207, 1210 (4th Cir. 1989) (reversing directed verdict against claim brought by new truck drivers who participated in initial training); *Fowler v. Incor*, 279 F. App'x. 590, 599 (10th Cir. 2008) (vacating trial court decision finding training non-compensable); *accord Moreau v. Klevenhagen*, 956 F.2d 516, 521 (5th Cir. 1992), *aff'd*, 508 U.S. 22 (1993) ("Job-related training activities are generally compensable under FLSA.").[12]

---

[12]     At the district court level, numerous decisions have found in favor of plaintiffs seeking compensation for training. For a partial list of examples in the past decade, see *Senne v. Kan. City Royals Baseball Corp.*, 591 F. Supp. 3d 453, 530 (N.D. Cal. 2022) (denying summary judgment against minor league baseball players seeking compensation for training); *Montoya v. CRST Expedited, Inc.*, 404 F. Supp. 3d 364, 389 (D. Mass. 2019) (ruling that attendees at a "driver training program" for new employees were entitled to compensation for part of the program); *Greene v. Cnty. of Essex*, No. 23-572, 2023 BL 198085, at *5 (D.N.J. June 9, 2023) (denying motion to dismiss claim seeking compensation for police officers' attendance at training); *Delizo v. Ability Works Rehab Servs., LLC*, No. 19-10237, 2020 BL 254917, at *7 (E.D. Mich. July 9, 2020) (denying summary judgment against claim for compensation for time in training); *Hawkins v. Securitas Sec. Servs. USA, Inc.*, No. 09 C 3633., 2013 BL 83035, at *5 (N.D. Ill. Mar. 28, 2013) (denying summary judgment against claim for compensation for time in training and orientation).

Likewise, since 1961, Department of Labor regulations have required employers to compensate employees for training in many circumstances. 29 C.F.R. § 785.27. And even under OPM's more stingy approach, employees must be paid for overtime work during non-entry level training when they are "directed to participate in the training" and the "purpose of the training is to improve" the employee's job performance. 5 C.F.R. § 551.423(a)(2).

Given the uniform consensus that employees must be compensated for attending training in some circumstances, the question is whether the OPM regulation reasonably draws a line between compensable training and non-compensable training.

OPM's approach is not reasonable. OPM has created separate rules for "entry level training," greatly limiting overtime compensation for that type of training. If a training is *not* entry level, then an employee is entitled to overtime pay if a federal agency directs the employee to attend that training and the training improves the employee's job performance. *See* 5 C.F.R. § 551.4423(a)(2). But in the exact same circumstances, if the training *is* entry level, the employee receives no pay for work outside of regular working hours, unless they perform productive work. *See* 5 C.F.R. § 551.423(a)(3).

Nothing in the text of the FLSA suggests that "entry level training" is a special category in which employees have a limited right to compensation. And no court has so held.

Moreover, OPM has never explained why it singled out "entry level training" in this manner. When OPM initially promulgated its training regulation in 1981, it did not attempt to justify the entry level training regulation as an interpretation of the FLSA. *See* 45 Fed. Reg. at 85661.

In this case, the Government has also failed to explain how the regulation can be squared with the FLSA. The Government's appeal brief attempts to justify the regulation as an exercise in balancing competing commands of the FLSA, GETA, and FEPCA. Def. Br. at 11. We have explained above why that justification should be rejected.

In the trial court, the Government argued that its regulation was consistent with the FLSA because Section 551.423(a)(3) does not entirely eliminate compensation for entry level training, but rather allows compensation for regular working hours and productive work during entry level training. *See* Appx857-Appx858.

But the fact that the regulation pays employees for *some* of their work does not explain why it fails to pay them for *all* of the work.  If anything, the Government's argument illustrates the arbitrariness of Section 551.423(a)(3): An

employee will be paid for performing a training activity at 1:00 PM on Monday (assuming that time is within "regular working hours") but will not be paid for performing the exact same task at 7:00 PM on a Monday or 1:00 PM on Sunday (assuming that time is outside "regular working hours")—even if an instructor requires the trainee to do the task outside normal work hours. OPM fails to explain how this distinction can possibly be justified by the FLSA.

Thus, Section 551.423(a)(3) draws two distinctions that are not justified by the text of the FLSA: (1) it distinguishes between "entry level training" and non-entry level training, and (2) it distinguishes between work performed during "regular working hours" and outside it.

OPM's regulation also draws no support from *Walling,* the key Supreme Court precedent. In *Walling,* the Court distinguished between trainees who are "employees" within the meaning of the Act and trainees who are not. 330 U.S. at 152–53. Here, though, OPM's regulation applies to individuals who are undisputedly employees of the federal government at the time they attend training. For instance, when Plaintiff attended the Course, she already been a federal government employee for seven years. *See supra* at 11.

Some courts have read *Walling* to distinguish between training that primarily benefits the trainee and training that primarily benefits the employer. *See Walling,* 330 U.S. at 152 (noting that those who "work for their own advantage on the

37

premises of another" are not employees); *Harbourt*, 820 F.3d at 659 (describing the "critical legal question" as "whether the trainee or the company was the 'primary beneficiary' of the training program").

But here again, Section 551.423(a)(3) does not reasonably interpret the statute. Entry level training may primarily benefit the employer. For instance, in *McLaughlin v. Ensley,* the Fourth Circuit held that a training for new truck drivers was compensable because it principally benefited the employer. *See* 877 F.2d at 1210 (noting that the employer "obtained employees able to perform at a higher level" and an "opportunity to review job performance" of the trainees; meanwhile, trainees drew limited benefit because "the skills learned were either so specific to the job or so general to be of practically no transferable usefulness").

This case provides another example. Though the record has not yet been developed through discovery, there is evidence that the FBI benefits from the training by teaching skills to trainees that are specific to the Intelligent Analyst and Agent positions at the FBI, which the trainees could not easily use to their own advantage in a different position. Appx774-Appx775.

In the trial court, the Government also cited a few circuit court decisions finding that probationary employees were not entitled to compensation for attending general courses open to the public. *See* Appx463-Appx465 (citing *Bienkowski v. Northeastern Univ.*, 285 F.3d 138 (1st Cir. 2002); and *Chao v.*

*Tradesmen Int'l, Inc.*, 310 F.3d 904, 909–10 (6th Cir. 2002)). In addition, the Government cited a case finding that apprentices were not entitled to compensation for participation in an apprenticeship program. Appx463-Appx465. (citing *Ballou v. General Elec. Co.*, 433 F.2d 109 (1st Cir. 1970)).

However, the Government did not cite these cases as part of its defense of 5 C.F.R. § 551.423(a)(3). Rather, it raised the cases in support of an alternative argument that the training at issue in this case was non-compensable under DOL regulations. *See* Appx463-Appx465. The Government does not press that alternative argument on appeal, nor did it cite those cases in its opening brief.[13]

In sum, OPM's training regulation is unreasonable because it arbitrarily excludes compensation for most overtime worked during entry level trainings. Nothing in the text of the FLSA or authoritative precedent supports treating entry level trainings as a separate category that is singled out for such treatment. Nor does the statutory text or precedent support OPM's distinction between tasks

---

[13]    In any event, these cases are easily distinguishable. *Ballou* involved apprentices attending an apprenticeship program compliant with DOL standards, whose attendance was therefore non-compensable under 29 C.F.R. § 785.32. *See* 433 F.2d at 112. As to *Bienkowski* and *Chao*, both cases involved attendance at legally-required safety courses offered to the general public: an EMT training in *Bienkowski* (285 F.3d at 139) and a safety course offered by the Occupational Health and Safety Administration in *Chao* (310 F.3d at 905). This case, by contrast, involves a course specific to FBI agents and intelligence analysts, attended only by FBI employees at an FBI training facility.

performed during regular working and tasks performed outside regular working hours. Accordingly, Section 551.423(a)(3) does not pass step one of *Billings*.

## IV. If the Court upholds OPM's training regulation, it should vacate and remand.

The Government asks this Court to "reverse the decision of the trial court." Def. Br. at 19. That request is overbroad. Even if this Court were to find that the trial court erroneously invalidated Section 551.423(a)(3), the appropriate outcome would be vacatur and remand.

Vacatur and remand would be proper because, even if Section 551.423(a)(3) were valid, there remain issues to be decided by the trial court. Most important, the trial court would need to decide whether the training at issue in this case was "entry level training." The trial court's opinion reserves that question. Appx12 n.3. And that issue is not within the scope of the issue presented by the Government on this appeal or certified by this Court for interlocutory appeal. Further, there are arguments to narrowly construe the phrase "entry level training," such as the fact that it included in a list with "apprenticeships," "internship[s]," and "work study training," all of which are narrow categories of training for students or employees new to the workforce. *See United States v. Williams*, 553 U.S. 285, 294 (2008)

("[A] word is given more precise content by the neighboring words with which it is associated.").[14]

## CONCLUSION

For the foregoing reasons, the trial court's summary judgment ruling should be affirmed in full.

Respectfully Submitted,

/s/ *Michael P. Ellement*

Michael P. Ellement
James & Hoffman, P.C.
1629 K Street NW, Suite 1050
Washington, DC 20006
(202) 495-05000
(202) 496-0555 (fax)
mpellement@jamhoff.com

Dated: December 11, 2023          Counsel for Plaintiff-Appellees

---

[14]    In addition, the Government suggests in its appeal brief that plaintiff was entitled to be paid "overtime wages for scheduled activities outside of working hours." Def. Br. at 15. However, the record contains no evidence that plaintiff was in fact paid for all "scheduled activities outside of working hours." Plaintiff intends to present evidence on that issue in the trial court.

## <u>CERTIFICATE OF COMPLIANCE</u>

1.      This brief complies with the type-volume limitation of Federal Circuit

Rule 32(a) because this brief contains 8,786 words, excluding the parts of the

brief exempted by Federal Rule of Appellate Procedure 32(f) and Federal

Circuit Rule 32(b).

2.      This brief complies with the typeface requirements of Federal Rule of

Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of

Appellate Procedure 32(a)(6) because this brief has been prepared in a

proportionally spaced typeface using Microsoft Word 2016 in 14-point Times

New Roman font.

<div style="margin-left: 40%;">

/s/ *Michael P. Ellement*

Michael P. Ellement
James & Hoffman, P.C.
1629 K Street NW, Suite 1050
Washington, DC 20006
(202) 495-05000
(202) 496-0555 (fax)
mpellement@jamhoff.com

Counsel for Plaintiff-Appellees

</div>

Dated: December 11, 2023