No. 2023-1653

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FEDERAL CIRCUIT

| | |
|---|---|
| DOE NO. 1, | ) |
| | ) |
| Plaintiff-Appellee, | ) |
| | ) |
| v. | ) |
| | ) |
| THE UNITED STATES, | ) |
| | ) |
| Defendant-Appellant. | ) |

APPEAL FROM THE UNITED STATES
COURT OF FEDERAL CLAIMS, in No. 19-1747C, Judge Schwartz

## **DEFENDANT-APPELLANT'S CORRECTED BRIEF**

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney
General

PATRICIA M. MCCARTHY
Director

REGINALD T. BLADES, JR.
Assistant Director

REBECCA S. KRUSER
Senior Trial Counsel
Commercial Litigation Branch
Department of Justice, Civil Division
P.O. Box 480
Washington, DC 20044
Telephone: (202) 305-2035
rebecca.s.kruser@usdoj.gov

October 2, 2024                    Attorneys for Defendant-Appellant

# <u>TABLE OF CONTENTS</u>

STATEMENT OF THE ISSUE ...................................................................1

STATEMENT OF THE CASE ...................................................................1

I.    Nature Of The Case .......................................................................1

II.    Relevant Factual And Legal Background .........................................2

    A.    The Statutes And Regulations At Issue .................................2

    B.    Plaintiff's Employment .......................................................4

    C.    Procedural History ..............................................................5

SUMMARY OF THE ARGUMENT ..........................................................6

ARGUMENT ..........................................................................................7

I.    Standard Of Review ......................................................................7

II.    5 C.F.R. § 551.423(a) Is A Valid Regulation ..................................8

    A.    It Is Not Clear *Billings* Applies ...........................................8

    B.    Section 551.423 Is Valid Under *Billings* ..............................9

        i.    The OPM Regulation Is Not Invalid Under the *Billings* Test ...............................................................9

        ii.    Any Difference Between The DOL And OPM Regulations Is Justified ...............................................................10

    C.    OPM, Not DOL, Has Rulemaking Authority Concerning Federal Employees ......................................................................16

CONCLUSION .....................................................................................19

# TABLE OF AUTHORITIES

<u>Cases</u>

*Adams v. United States*,
40 Fed. Cl. 303 (1998) ....................................................... 13, 14, 18, 19

*Billings v. United States*,
322 F.3d 1328 (Fed. Cir. 2003) ................................................... passim

*Columbia Gas Sys., Inc. v. United States*,
70 F.3d 1244 (Fed. Cir. 1995) ............................................................ 8

*Hologic, Inc. v. SenoRx, Inc.*,
639 F.3d 1329 (Fed. Cir. 2011) .......................................................... 7

*Innovair Aviation Ltd. v. United States*,
632 F.3d 1336 (Fed. Cir. 2011) .......................................................... 8

*Lear Siegler Servs., Inc. v. Rumsfeld*,
457 F.3d 1262 (Fed. Cir. 2006) .......................................................... 7

*Skidmore v. Swift*,
323 U.S. 134 (1944) ..................................................................... 3, 8

*Zumerling v. Devine*,
769 F.2d 745 (Fed. Cir. 1985) ........................................................... 9

<u>Statutes</u>

5 U.S.C. § 4101 *et seq.* ................................................................... 10

5 U.S.C. § 4102(b) ...................................................................... 2, 3

5 U.S.C. § 4109 .................................................................. 2, 3, 10, 11

5 U.S.C. § 4118(a) ..................................................................... 2, 10

5 U.S.C. § 5542 ........................................................................ 2, 11

29 U.S.C. § 204(f) .................................................................... 10, 16

29 U.S.C. § 213 ........................................................................... 8

Federal Employees Pay Comparability Act of 1990,
Pub. L. No. 101-509, 104 Stat. 1427 .................................................................. 11

Regulations

5 C.F.R. § 410.402 ........................................................................................... passim

5 C.F.R. § 551.401 ...............................................................................................14

5 C.F.R. § 551.423 ........................................................................................... passim

29 C.F.R. § 785.2 ...............................................................................................3, 8

29 C.F.R. § 785.27 ...............................................................................................3

29 C.F.R. § 785.32 ...............................................................................................4

Other Authorities

Fair Labor Standards Amendments of 1974, H.R. Rep. No. 93–913,
*reprinted in* 1974 U.S.C.C.A.N. 2811 ........................................................... 15, 16

45 Fed. Reg. 85651 (1980) ...............................................................................15

64 Fed. Reg. 69165 (1999) ............................................................................... 15

70 Fed. Reg. 72065 (2005) ............................................................................... 15

Merriam-Webster Online, *available at* https://www.merriam-webster.com/dictionary/consistency ................................................................. 16

## <u>STATEMENT OF RELATED CASES</u>

Pursuant to Fed. Cir. R. 47.5, counsel states that no other appeal has been taken in this case in or from the United States Court of Federal Claims before this Court or any other appellate court.

Counsel further states that she is unaware of any cases pending before this Court that would directly affect this Court's decision in this appeal.

## **STATEMENT OF JURISDICTION**

On July 26, 2022, the United States Court of Federal Claims issued the interlocutory order that is subject to appeal.  Appx12-22.  The trial court certified that order for appeal on January 9, 2023.  Appx1098-1106.  On March 23, 2023, this Court granted our petition for interlocutory appeal of the order in question.

This Court has jurisdiction under 28 U.S.C. § 1292(d).

IN THE UNITED STATES COURT OF APPEALS
FOR THE FEDERAL CIRCUIT

| | | |
|---|---|---|
| DOE NO. 1, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | No. 2023-1653 |
| | ) | |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |

## DEFENDANT-APPELLANT'S CORRECTED BRIEF

## STATEMENT OF THE ISSUE

Whether the United States Court of Federal Claims erred in invalidating 5 CFR 551.423(a)(3), an Office of Personnel Management (OPM) entry-level training regulation, because it is different from Department of Labor (DOL) training regulations.

## STATEMENT OF THE CASE

## I.     Nature Of The Case

Doe No. 1 seeks compensation under the Fair Labor Standards Act (FLSA) for time spent studying, doing homework, and other activities outside of regularly scheduled training sessions during the Basic Field Training Course required by the Federal Bureau of Investigation (FBI).  Appx23-39.  The United States challenges a Court of Federal Claims decision, Appx12-22, invalidating an OPM entry-level

training regulation because it differs from DOL training regulations. The trial court found that, under *Billings v. United States,* 322 F.3d 1328 (Fed. Cir. 2003), OPM's training regulation for entry-level employees differed from DOL training regulations without adequate justification for the differences.

## II.    Relevant Factual And Legal Background

### A.    The Statutes And Regulations At Issue

Congress specifically granted OPM authority to promulgate regulations covering "requirements and limitations necessary with respect to payments and reimbursements in accordance with section 4109 of [title 5]." 5 U.S.C. § 4118(a)(8).

OPM has the authority to regulate the FLSA for Federal employees, 29 U.S.C. § 204(f), and to regulate hours of work and overtime hours for the purposes of FLSA overtime, 5 U.S.C. § 5542(c). *See also* 5 C.F.R. part 551 (OPM implementing regulations, including, in subpart D, allowing OPM to define hours of work). OPM also has authority to regulate training. *See* 5 U.S.C. § 4109(a)(1) (establishing a general bar on overtime, holiday, and night pay for training); 5 U.S.C. § 4102(b) (allowing for exceptions to the general bar); 5 U.S.C. § 4118(a)(8) (authority to regulate payments under section 4109); *see also* 5 C.F.R. § 410.402 (describing the general prohibition and the allowed exceptions); 5 C.F.R. § 410.402(d) (stating that the general bar on paying "premium pay" in

section 410.402(a) does not apply to the payment of FLSA overtime pay; instead, the FLSA regulations in 5 C.F.R. § 551.423 must be followed).  In other words, OPM has authority to regulate both FLSA and training.  FLSA overtime is covered by the general bar on overtime pay during training in 5 U.S.C. § 4109(a)(1), but 5 C.F.R. § 410.402(d) provides for limited exceptions for FLSA overtime pay, as permitted by 5 U.S.C. § 4102(b).

As relevant to this case, the OPM regulation, 5 C.F.R. § 551.423(a), states,

> (1) Time spent in training during regular working hours shall be considered hours of work.
> (2) Time spent in training outside regular working hours shall be considered hours of work if:
> (i) The employee is directed to participate in the training by his or her employing agency; and
> (ii) The purpose of the training is to improve the employee's performance of the duties and responsibilities of his or her current position.
> (3) Time spent in apprenticeship or other entry level training … outside regular working hours shall not be considered hours of work, provided no productive work is performed during such periods…

[subject to limited exceptions].

DOL has described the regulations pertinent to this case as a "practical guide for employers and employees as to how the office representing the public interest in its enforcement will seek to apply" the statute.  29 C.F.R. § 785.2 (quoting *Skidmore v. Swift*, 323 U.S. 134, 138 (1944)).  The DOL regulation 29 C.F.R. § 785.27 states,

> Attendance at lectures, meetings, training programs and
> similar activities need not be counted as working time if
> the following four criteria are met:
> (a) Attendance is outside of the employee's regular
> working hours;
> (b) Attendance is in fact voluntary;
> (c) The course, lecture, or meeting is not directly related
> to the employee's job; and
> (d) The employee does not perform any productive work
> during such attendance.

In addition, DOL regulation 29 C.F.R. § 785.32 excludes "time spent in an

organized program of related, supplemental instruction by employees working

under bona fide apprenticeship programs," so long as the "apprentice is employed

under a written apprenticeship agreement or program" that meets certain standards,

and "[s]uch time does not involve productive work or performance of the

apprentice's regular duties."

### B.    Plaintiff's Employment

Plaintiff is employed by the FBI as an Intelligence Analyst (IA).  Appx25.

The FBI requires all entry-level IAs to complete its Basic Field Training Course

(BFTC).  Appx25.  The purpose of the BFTC is to ensure IA candidates–otherwise

known as New Intelligence Analyst Trainees (NIATs)–will, upon graduation from

the course, have attained the necessary basic proficiencies in specialized

knowledge, skills, and abilities needed to perform their assigned duties.  Appx473,

Appx500-504.  NIATs are subject to a probationary period beginning on the first

day they report for the BFTC.  Appx473, Appx500-504.  Trainees who fail to meet the minimum proficiency and suitability standards for their jobs may be dismissed from the BFTC and become ineligible to participate in future sessions of the BFTC.  Appx476.  Further, failure to complete and pass basic IA training results in removal from the IA job series and possible termination from the FBI.  Appx481, Appx504.

Plaintiff participated in the FBI's BFTC from January 2018, through April 2018, at the FBI Training Academy in Quantico, Virginia.  Appx25.  Plaintiff alleges that, in addition to attending scheduled training sessions, NIATs needed to do unscheduled homework—for example, study materials, work on team projects, write reports and other training documents, prepare briefings, and prepare for and perform interviews and that they were not paid overtime wages for this time.  Appx25-26.  Plaintiff alleges that they are therefore owed overtime compensation under the FLSA.  *See generally* Appx23-39.

### C.    **Procedural History**

On November 11, 2019, plaintiff filed a complaint in the Court of Federal Claims, alleging that plaintiff, and others similarly situated, did not receive overtime compensation for "all hours worked in excess of 8 hours each day and/or 40 hours in a workweek," during the FBI's BFTC.  Appx18, Appx25-27.  The United States initially filed a motion to dismiss under Rule 12(b)(6) of the rules of

the trial court, but during oral argument on that motion, agreed to convert the

motion to a motion for summary judgment so that the court could consider

additional materials outside of the allegations in the complaint.

On July 26, 2022, the court issued its opinion under seal denying our motion

for summary judgment.  The court expressly found 5 C.F.R. § 551.423(a)(3) to be

invalid under *Billings v. United States,* 322 F.3d 1328 (Fed. Cir. 2003)*,* because it

was different from the DOL regulation and because the court did not believe

anything adequately justified OPM's departure from the DOL regulation.  Appx17-

20.  The court also called into question the validity of 5 C.F.R. § 551.423(a)(2),

another of OPM's training regulations.  The court's opinion was unsealed on

August 9, 2022.  Appx12-22.  The trial court certified that order for appeal on

January 9, 2023.  Appx1098-1106.  On January 23, 2023, we filed in this Court a

petition for review of that order.  Plaintiffs filed their response on January 31,

2023, and we filed our reply on February 3, 2023.  On March 23, 2023, this Court

granted our petition for interlocutory appeal of the order in question.

## <u>SUMMARY OF THE ARGUMENT</u>

The trial Court erroneously held that, under *Billings*, 322 F.3d 1328, (1) the

OPM and DOL training regulations were not adequately alike; and (2) that there

was no justification for any difference between the two sets of regulations.  On this

basis, the Court found the OPM entry-level training regulation invalid.  However,

the OPM and DOL regulations need not be identical, so long as the OPM regulation is consistent with the FLSA. Moreover, the OPM regulation is not invalid under *Billings*.

Additionally, the OPM regulation accounts for another statute that applies to only Federal employees, the Government Employees Training Act, which explicitly forbids premium pay for most training related overtime. OPM has exercised its statutory authority to administer both the training and FLSA provisions and established regulations that balance its FLSA regulations against this general prohibition, while DOL regulations do not need to address this prohibition. Therefore, any difference between OPM and DOL regulations is justified and does not render the OPM regulation invalid.

Finally, a DOL regulation–particularly an interpretive statement of policy–cannot invalidate an OPM regulation that reasonably applies the FLSA because Congress has explicitly stated that OPM–and not DOL–has the broad and independent authority to craft FLSA rules for Federal employment.

## ARGUMENT

## I.   Standard Of Review

"We review a district court's decision on summary judgment *de novo*, reapplying the same standard applied by the district court." *Hologic, Inc. v. SenoRx, Inc.*, 639 F.3d 1329, 1334 (Fed. Cir. 2011). "Statutory and regulatory

constructions are questions of law, which we review *de novo*." *Lear Siegler Servs., Inc. v. Rumsfeld*, 457 F.3d 1262, 1266 (Fed. Cir. 2006); *see also Columbia Gas Sys., Inc. v. United States*, 70 F.3d 1244, 1246 (Fed. Cir. 1995) ("[T]his court reviews legal conclusions *de novo*."); *Innovair Aviation Ltd. v. United States*, 632 F.3d 1336, 1342 (Fed. Cir. 2011) ("In reviewing the judgments of the Court of Federal Claims, this court reviews legal conclusions *de novo*.").

## II.    5 C.F.R. § 551.423(a) Is A Valid Regulation

### A.    It Is Not Clear *Billings* Applies

As an initial matter, it is not clear that *Billings* should apply when the DOL regulation is an interpretive rule. In *Billings*, the regulations at issue were legislative rules that were promulgated pursuant to regulatory authority under 29 U.S.C. § 213. By contrast, DOL has described the regulations pertinent to this case as a "practical guide for employers and employees as to how the office representing the public interest in its enforcement will seek to apply" the statute. 29 C.F.R. § 785.2 (quoting *Skidmore*, 323 U.S. at 138). Even accepting *Billings*' suggestion that a binding DOL regulation can invalidate an inconsistent OPM regulation, that principle should not be stretched further to allow DOL's *interpretive* statement of policy to invalidate a regulation that OPM issued pursuant to notice-and-comment rulemaking.

8

**B.**   **Section 551.423 Is Valid Under *Billings***

In determining the validity of an OPM regulation applying the FLSA under *Billings*, a court considers (1) "whether the OPM interpretation of the [FLSA] is reasonable," and (2) "whether any difference between OPM's interpretation and the [DOL] standard is required to effectuate the consistency of application of the provision to both federal and non-federal employees." *Billings*, 322 F.3d at 1334 (citing *Zumerling v. Devine*, 769 F.2d 745, 750 (Fed. Cir. 1985) ("OPM's guidelines must 'harmonize with the statute's 'origin and purpose,' . . . as well as with the Secretary of Labor's regulations.")).

**i.**   **The OPM Regulation Is Not Invalid Under the *Billings* Test**

Contrary to the trial court's reasoning, *Billings* does not require the OPM and DOL regulations to be identical, so long as the OPM regulation is consistent with the FLSA.  In *Billings*, the OPM regulation differed significantly from the DOL regulation:  the OPM regulation did not include a salary test, as the DOL regulation did, and consequently the *Billings* plaintiffs would have been considered FLSA non-exempt employees and entitled to overtime compensation under DOL's regulation but not under OPM's regulation.  *See Billings,* 322 F.3d at 1332-34. Further, the court specifically rejected the plaintiffs' argument that the OPM regulation was invalid merely because it was inconsistent with the DOL

regulations and excluded more employees, *id.*, which is the exact argument

plaintiff has erroneously advanced in this case.

### ii. Any Difference Between The DOL And OPM Regulations Is Justified

Like in *Billings*, OPM promulgated regulations regarding overtime pay that

are balanced against existing statutes that DOL regulations do not need to take into

account. First, OPM is limited by another statute that explicitly forbids premium

pay for training related overtime in most circumstances for Federal employees.

The Government Employees Training Act (GETA), codified at 5 U.S.C. Chapter

41, became law in 1958–16 years before the FLSA was extended to cover Federal

employees. Under GETA, agencies manage their own training, determine their

own training needs, and select and fund training to meet those needs. 5 U.S.C.

§ 4101, *et seq.* Pursuant to statutory authority, OPM is tasked with providing

regulations containing the principles, standards, and related requirements for the

programs for the training of employees under GETA, 5 U.S.C. § 4118(a), just as it

is with the FLSA, 29 U.S.C. § 204(f) (FLSA generally); 5 USC § 5542(c)(hours of

work). Under GETA, the head of an agency, consistent with any regulations

promulgated under § 4118, may "pay all or a part of the pay (*except* overtime,

holiday, or night differential pay) of an employee of the agency selected and

assigned for training under this chapter." 5 U.S.C. § 4109 ("Expenses of

Training") (emphasis added). Thus, as a general matter, for 60 years, Federal

employees may *not* receive premium pay, including overtime, for time spent in training.  5 U.S.C. § 4109; 5 C.F.R. § 410.402.

Further, OPM's authority to define hours of "work" for purposes of FLSA overtime pay is circumscribed by the Federal Employees Pay Comparability Act of 1990 (FEPCA).  *See* 5 U.S.C. § 5542(c).  This is a second and equally important difference between the Federal and private sector and is related to GETA's prohibition on the payment of premium pay for time spent in training.  FEPCA, Pub. L. No. 101-509, 104 Stat. 1427, as amended, eliminated dual computations for FLSA non-exempt employees that would otherwise be covered by 5 U.S.C. § 5542 ("Overtime rates; computation").  FEPCA added section 5542(c), which provides that Title 5 overtime pay rules in section 5542(a) do not apply to FLSA non-exempt employees; instead, only FLSA rules would apply.  *Id.*  However, section 5542(c) also provides that OPM must, by regulation, prescribe what hours would be considered hours of work and what hours of work would be considered overtime hours for purposes of FLSA overtime (an authority over hours of work and overtime hours for FLSA nonexempt employees that OPM did not previously possess).  Specifically, section 5542(c) provides that "the Office of Personnel Management shall by regulation prescribe what hours shall be deemed to be hours of work and what hours of work shall be deemed to be overtime hours for the purpose of such section 7 so as to ensure that no employee receives less pay by

11

reason of" application of the first sentence of section 5542(c) (excluding employees who are subject to the FLSA overtime pay provisions from coverage under the Title 5 overtime pay provisions of section 5542(a)). *Id.* In response, OPM added provisions in the FLSA regulations to state that hours of work under Title 5 rules would also qualify as FLSA hours of work but did not change the FLSA hours of work rules. 5 C.F.R. § 551.401. OPM did, however, amend its training regulations to provide that the regulations governing overtime pay for FLSA nonexempt employees during training are found in 5 C.F.R. § 551.423, and that the general prohibitions on premium pay for training are not applicable for the purposes of paying FLSA overtime pay. 5 C.F.R. § 410.402(d). In other words, FLSA overtime pay for training, as governed by 5 C.F.R. § 551.423, is an exception to GETA's general prohibition on paying overtime to Federal employees during training.

To the extent the OPM and DOL regulations differ, the differences in the OPM regulations regarding overtime pay for training are based on the statutory context and history that require OPM to promulgate its training overtime pay regulations as an *exception* to a general rule prohibiting overtime for Federal employees' training. DOL, however, was not required to balance its training overtime regulations against an equivalent statutory prohibition applicable to private sector employees. Put another way, both the OPM and DOL regulations

12

require a showing that an exception to a general rule exists. DOL regulations proceed from a presumption of compensability and therefore require certain criteria to be met for the time spent in training to not be compensated. In contrast, due to statutes that apply solely to Federal employment, OPM regulations proceed from a presumption of non-compensability for the entry-level training activities in question and thus require certain criteria to be met to be eligible for compensation. *See Adams v. United States*, 40 Fed. Cl. 303, 306-07 (1998) (discussing how the differences between Federal and private employees' pay structure explained why OPM regulations did not include a salary-basis test for executives while DOL's regulations did).

In sum, laws governing Federal employment and training differ from laws and policies governing the myriad types of private employers based on their various training needs. Exercising its independent statutory authorities to administer both the training and FLSA provisions, applying its expertise administering various Federal employment statutes, and having engaged in notice-and-comment rulemaking, OPM established regulations that allow Federal non-exempt employees to receive overtime for training under the FLSA to the greatest extent possible, without running afoul of other statutory prescriptions that apply to only Federal employees. *See Billings*, 322 F.3d at 1334 (finding that inclusion of salary-basis test for executives in DOL, but not OPM, regulations was appropriate

to account for the fact that "federal employees are subject to suspensions under Title V that are not applicable in the private sector"); *see also Adams*, 40 Fed. Cl. at 306-08. "Because of the peculiar nature of the statutory framework surrounding federal employment, it is reasonable for OPM's regulation to vary from the Labor Department standard . . . . Thus, the variance in OPM's regulation is no more than needed to accommodate the difference between private and public sector employment." *Billings*, 322 F.3d at 1334.

The trial court's reasoning regarding the relevance of GETA is mistaken. The court held that, because GETA and the FLSA are different statutes "with the border between them established by regulation," Appx19, GETA cannot have any impact on how OPM implements the FLSA. For support, the court cites 5 C.F.R. § 410.402(d), Appx19, which states in full that "[r]egulations governing overtime pay for employees covered by Fair Labor Standards Act (FLSA) during training, education, lectures, or conferences are found in § 551.423 of this chapter. The prohibitions on paying premium pay found in paragraph (a) of this section are not applicable for the purpose of paying FLSA overtime pay." *See also* 5 C.F.R. § 551.401(f) ("For the purpose of determining hours of work in excess of 8 hours in a day under this part, agencies shall credit hours of work under § 410.402 of this chapter."); 5 C.F.R. § 551.401(g) ("For the purpose of determining hours of work in excess of 40 hours in a week . . ., agencies shall credit hours of work under

14

§ 410.402 of this chapter.").  However, the very regulations that delineate "the border between [GETA and FLSA]" are promulgated by OPM, relying on its expertise and authority to administer both statutes.  Moreover, 5 C.F.R. § 410.402(d) does not invalidate 5 C.F.R. § 551.423, because 5 C.F.R. § 410.402(d) explicitly provides that 5 C.F.R. § 551.423 is the training regulation that contains the FLSA related exceptions to GETA.

The trial court also misapprehended 5 C.F.R. § 551.423(a)(3) to exclude all overtime for entry-level trainees, when it excludes only the narrow category of non-productive activities.  *See, e.g.,* Appx20 ("Section 551.423(a)(3) creates a categorical rule against overtime for entry-level training.").  The court further states that "[o]nce OPM permits overtime for training, excluding *entry-level training* is an arbitrary deviation from FLSA."  Appx18 (citing 5 C.F.R. § 551.423(a)(2)).  However, 5 C.F.R. § 551.423(a)(2) conditions the availability of overtime for regular non-entry level training on two criteria, which, if not met, mean that the employee does not receive overtime compensation for the training.  In sum, contrary to the trial court's conclusions, 5 C.F.R. § 551.423(a)(3) does not exclude all overtime for entry-level trainees; notably, the plaintiffs in this case were paid overtime wages for scheduled activities outside of working hours.

The trial court also concluded that OPM's ability to define "hours of work" is irrelevant because OPM supposedly did not define hours of work more narrowly

than DOL, Appx19-20, even though 5 C.F.R. § 551.423(a)(3) defines what hours spent in training count as work.  Moreover, as discussed above, any differences between the OPM and DOL regulations result from the need to navigate through, harmonize, and give effect to the different laws and regulations applicable to Federal rather than non-Federal employment.

**C.    OPM, Not DOL, Has Rulemaking Authority Concerning Federal Employment**

An OPM regulation cannot be invalidated by a DOL regulation if OPM's interpretation of the FLSA is reasonable.[1]  Congress determined that OPM, and not DOL, should administer the FLSA for Federal employees because of the differences between Federal and non- Federal employment and granted OPM broad and unfettered authority to do so.  *See* 29 U.S.C. § 204(f) ("Notwithstanding any other provision of this chapter [the FLSA], or any other law, the Director of the Office of Personnel Management is authorized to administer the provisions of this chapter with respect to any individual employed by the United States." (with some exceptions)).  The text of the statute granting that authority does not limit that authority based upon DOL regulations or provide for a DOL "override" of an OPM regulation properly promulgated.  As pertinent to this case, applying its experience administering various Federal employment statutes and its statutory

---

[1]  The trial court found that "OPM's interpretation of FLSA could be reasonable, at least in the abstract."  Appx17.

authority to interpret the FLSA, and having engaged in notice-and-comment rulemaking, *see* 45 Fed. Reg. 85651, 85654 (1980), *as amended* 64 Fed. Reg. 69165, 69180 (1999); 70 Fed. Reg. 72065, 72068 (2005), OPM established regulations that allow Federal FLSA non-exempt employees to receive overtime for training under the FLSA to the greatest extent possible, without running afoul of other statutory proscriptions that apply to only Federal employees. Having properly exercised its congressionally granted authority to regulate the FLSA as to Government employment, and having promulgated its regulations pursuant to notice and comment rulemaking procedures, the idea that differences with similar DOL regulations could invalidate such OPM regulations appears incongruous with congressional intent as expressed in the statute itself.

The legislative history does suggest that Congress wanted OPM to administer the FLSA in a manner "to ensure consistency" with DOL's regulations. *Billings*, 322 F.3d at 1333 (quoting Fair Labor Standards Amendments of 1974, H.R. Rep. No. 93–913, at 28, *reprinted in* 1974 U.S.C.C.A.N. 2811 ("House Report 93-913"). However, consistency does not mean the regulations must be identical; it simply means that there must be a "harmony" between the regulations. *See* Miriam-Webster Online, "Consistency," *available at* https://www.merriam-webster.com/dictionary/consistency.

Additionally, the legislative history describes concerns about confusing FLSA standards with Title V rules as pertains to Federal employees, and that bringing Federal employees under the FLSA could result in confusion over administration of the provisions and cause "jurisdictional problems of administration."  House Report at 28.  To "resolv[e] this matter," Congress also "charg[ed] the Civil Service Commission"–OPM's predecessor–"with responsibility for administration of the Act so far as Federal employees (other than employees of the Postal Service, the Postal Rate Commission or the Library of Congress) are concerned."  *Id.*  Nowhere does the House Report state that DOL regulations can invalidate OPM regulations, or that OPM regulations must be identical to DOL regulations.  *See generally id.*  The trial court erred in ignoring parts of the legislative history and in privileging a single snippet of it.  More fundamentally, the trial court improperly placed greater weight on the legislative history than the statutory text, which clearly and unambiguously states that "[n]otwithstanding any other provision of this chapter [the FLSA], or any other law, the Director of the Office of Personnel Management is authorized to administer the provisions of this chapter with respect to any individual employed by the United States."  29 U.S.C. 204(f).

*Adams v. United States*, 40 Fed. Cl. 303, 308 (1998), properly considers the different rulemaking spheres of OPM and DOL.  That case concerned whether to

apply OPM's regulation or DOL's regulation concerning the same executive exemption criteria at issue in *Billings*.  In *Adams*, the court found that, even though the plaintiffs would be eligible for overtime compensation under the DOL regulation, applying the DOL regulation to Federal employees would "put the Secretary of Labor in a position of indirect rulemaking (indirect because DoL rules were promulgated for DoL constituents, not OPM constituents)."  *Id*. at 306-07. "Caution dictates against simply importing DOL-created standards into the federal sector without any conscious rulemaking at either DoL or OPM."  *Id*.

## CONCLUSION

For these reasons, we respectfully request that this Court reverse the decision of the trial court and hold that the challenged regulation is a valid exercise of OPM's statutorily granted authority to regulate the interpretation and application of the FLSA to Federal employment.

Respectfully submitted,
BRIAN M. BOYNTON
Principal Deputy Assistant Attorney
General

PATRICIA M. MCCARTHY
Director

/s/Reginald T. Blades, Jr.
REGINALD T. BLADES, JR.
Assistant Director

/s/Rebecca S. Kruser
REBECCA S. KRUSER
Senior Trial Counsel
Commercial Litigation Branch
Department of Justice, Civil Division
P.O. Box 480
Washington, DC 20044
Telephone: (202) 202-305-2035
rebecca.s.kruser@usdoj.gov

October 2, 2024                    Attorneys for the Defendant-Appellant

## CERTIFICATE OF COMPLIANCE

I hereby certify that this brief complies with the word limit of Federal Rule of Appellate Procedure 5(c)(1) and Federal Circuit Rule 5 because the brief was generated by a computer and contains 4,102 words, excluding the parts of the motion exempted by Federal Rule of Appellate Procedure 32(f).  I further certify that this motion complies with the typeface and type-style requirements of Federal Rules of Appellate Procedure 27(d)(1)(E), 32(a)(5), and 32(a)(6) because it has been prepared using Microsoft Word 2013 in a proportionally spaced typeface, 14-point Times New Roman font.

*/s/ Rebecca S. Kruser*
Rebecca S. Kruser

# ADDENDUM

Opinion of the United States Court of Federal Claims Case No. 19-1747 (July 26, 2022) ..............................................................................Appx12-22

# In the United States Court of Federal Claims

No. 19-1747C
(Filed Under Seal: July 26, 2022)
(Reissued: August 9, 2022)[*]
**FOR PUBLICATION**

```
*****************************************
DOE NO. 1,                              *
                                        *
            Plaintiff,                  *
                                        *
v.                                      *
                                        *
THE UNITED STATES,                      *
                                        *
            Defendant.                  *
                                        *
*****************************************
```

*Daniel M. Rosenthal*, James & Hoffman, P.C., Washington, D.C., for Plaintiff. With him on briefs were *Alice Hwang* and *Michael Ellement*, James & Hoffman, P.C., Washington, D.C., as well as *Linda Lipsett*, *Jules Bernstein*, and *Michael Bernstein*, Bernstein & Lipsett, P.C., Washington, D.C.

*Sarah E. Kramer*, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., for Defendant, United States. With her on briefs were *Brian M. Boynton*, Acting Assistant Attorney General, *Robert E. Kirschman, Jr.*, Director, *Martin F. Hockey, Jr.*, Acting Director, and *Reginald T. Blades, Jr.*, Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C, as well as *Eric A. Huang* and *Monica L. Hansen*, Assistant General Counsel, Federal Bureau of Investigation, Washington, D.C.

## OPINION AND ORDER

Plaintiff[1] — an intelligence analyst with the Federal Bureau of Investigation ("FBI") — alleges that the government failed to pay him for all the time he spent outside regular working hours completing the FBI Basic Field Training Course ("BFTC"). He seeks backpay and related forms of relief under the Fair Labor

---

[*] Pursuant to the protective order in this case, the Court initially filed this opinion under seal on July 26, 2022, for the parties to propose redactions of confidential or proprietary information. The parties were directed to propose redactions by August 9, 2022. The parties notified the court on August 8 that there were no proposed redactions. The Court hereby releases publicly the opinion and order of July 26 in full.

[1] This case is subject to a protective order to avoid disclosing Plaintiff's identity. *See* Protective Order (ECF 6); Amended Protective Order (ECF 53).

Standards Act ("FLSA") and other statutes. Defendant's motion for summary judgment is ripe for decision.[2] But because Defendant has failed to establish that it is entitled to judgment as a matter of law, the motion is **DENIED**.

## BACKGROUND

The following facts are undisputed. Plaintiff is an employee of the FBI. Doe No. 1 Decl. ¶ 3 (ECF 54-1). In 2018, Plaintiff transferred within the FBI to his position as an intelligence analyst. *Id.* ¶¶ 3–4. To become an intelligence analyst, Plaintiff had to meet certain standards and requirements, one of which was completing the BFTC. *Id.* ¶¶ 5–7, 19–20; Def.'s App'x at 32–33 (ECF 48-1). Plaintiff began the BFTC on the day of his job transfer. Doe No. 1 Decl. ¶¶ 4, 7.

The BFTC is a training program for new FBI agents and intelligence analysts. Def.'s App'x at 32; Doe No. 1 Decl. ¶¶ 9–10, 20. Besides in-person training sessions, the course required Plaintiff to complete various assessments and "to study materials, work on team projects, write reports and other training documents, prepare briefings, and prepare for and perform interviews[.]" Doe No. 1 Decl. ¶ 21; Def.'s App'x at 5, 33–34. Some of that activity was scheduled outside working hours or had to be completed on Plaintiff's own time. Doe No. 1 Decl. ¶ 21. Plaintiff claims that although he worked more than 8 hours per day and 40 hours per week during the BFTC, he was not compensated for all overtime hours. *Id.*

Defendant moved to dismiss on the ground that BFTC participants are entry-level trainees and therefore ineligible for the overtime compensation under 5 C.F.R. § 551.423(a)(3). *See* Motion to Dismiss (ECF 23). The judge previously assigned to the case converted the motion to a motion for summary judgment, *see* Scheduling Order (ECF 40), and the case was reassigned to me, Order (ECF 44).

After summary judgment briefing was complete, I denied a motion to dismiss based on 5 C.F.R. § 551.423(a)(3) in *Plaintiff No. 1 v. United States*, a similar case involving the Department of Defense Counterintelligence Agent Course. 154 Fed. Cl. 95 (2021). I held in *Plaintiff No. 1* that Section 551.423(a)(3) was potentially invalid, though I reserved the question of whether the government could eventually provide evidence or argument sufficient to justify reliance on it. *Id.* at 105. After hearing oral argument on the motion for summary judgment in this case, I ordered supplemental

---

[2] Compl. (ECF 1); Def.'s Mot. for Sum. J. (ECF 48) ("Def.'s Mot."); Pl.'s Opp. to the Govt.'s Mot. for Sum J. (ECF 54) ("Pl.'s Opp."); Def.'s Reply in Supp. of Its Mot. for Sum. J. (ECF 59) ("Def.'s Reply"). I held oral argument on Defendant's Motion on August 18, 2021, Tr. of Oral Arg. (ECF 64) ("Tr."), and ordered the parties to file supplemental briefing, Order (ECF 60); *see* Def.'s Suppl. Br. (ECF 65); Pl.'s Suppl. Br. in Resp. to the Govt.'s Mot. for Sum J. (ECF 66) ("Pl.'s Suppl. Br.").

briefing to address (1) the issue reserved in *Plaintiff No. 1*, and (2) the legal standard applicable in this case if Section 551.423(a)(3) is invalid. Order (ECF 60).

## **DISCUSSION**

### I.  **Jurisdiction**

The United States Court of Federal Claims has jurisdiction under the Tucker Act to adjudicate "any claim against the United States founded … upon … any Act of Congress or any regulation of an executive department … in cases not sounding in tort." 28 U.S.C. § 1491(a)(1). Because the Tucker Act is "a jurisdictional statute [that] does not create any substantive right enforceable against the United States for money damages," *United States v. Testan*, 424 U.S. 392, 398 (1976) (citing *Eastport S.S. Corp. v. United States*, 178 Ct. Cl. 599, 605–07 (1967)), parties asserting Tucker Act jurisdiction must "identify a substantive right for money damages against the United States separate from the Tucker Act itself." *Todd v. United States*, 386 F.3d 1091, 1094 (Fed. Cir. 2004). That requires a "money-mandating" source of law, *i.e.*, a statute or regulation that "can fairly be interpreted as mandating compensation by the Federal Government for the damage sustained and is reasonably amenable to the reading that it mandates a right of recovery in damages." *Jan's Helicopter Serv., Inc. v. F.A.A.*, 525 F.3d 1299, 1307 (Fed. Cir. 2008) (quotes and citations omitted) (quoting *United States v. Mitchell*, 463 U.S. 206, 217 (1983), and *United States v. White Mountain Apache Tribe*, 537 U.S. 465, 473 (2003)).

FLSA is a money-mandating source of law. *See Abbey v. United States*, 745 F.3d 1363, 1369 (Fed. Cir. 2014) ("As the courts have held … for three decades, since soon after the FLSA was extended to the federal government …, the Tucker Act applies to a claim against the government under the monetary-damages provision of the FLSA.") (citation omitted). It is undisputed that Plaintiff is a government employee bringing FLSA claims for overtime compensation, Compl. ¶¶ 1, 5; Def.'s Mot. at 1; Doe No. 1 Decl. ¶ 3, so this Court has jurisdiction to adjudicate his money-mandating claims.

Statutes of limitations in this Court are uniquely jurisdictional, requiring *sua sponte* consideration. *John R. Sand & Gravel Co. v. United States*, 552 U.S. 130, 132 (2008). FLSA provides a general two-year statute of limitations for violations of overtime payment provisions, and a three-year limitations period for willful violations. 29 U.S.C. § 255(a). A claim accrues when "all the events which fix the Government's alleged liability have occurred and the Plaintiff was or should have been aware of their existence." *Hopland Band of Pomo Indians v. United States*, 855 F.2d 1573, 1577 (Fed. Cir. 1988) (emphasis omitted). "As a general rule, 'a claim for unpaid overtime under the FLSA accrues at the end of each pay period when it is not

paid.'" *Udvari v. United States*, 28 Fed. Cl. 137, 139 (1993) (quoting *Cook v. United States*, 855 F.2d 848, 851 (Fed. Cir. 1988)).

Plaintiff began the BFTC on January 7, 2018, and completed it on April 4, 2018. Doe No. 1 Decl. ¶ 7. He filed his complaint on November 12, 2019, less than two years later. *See* Compl. His claims are therefore within the limitations period, regardless of whether the alleged violations were willful.

## II. <u>Merits</u>

Defendant argues, as in its motion to dismiss, that summary judgment should be granted because the BFTC is "entry-level training," which would mean that training time outside regular working hours does not count as "hours of work" and cannot be compensated as overtime. Def.'s Mot. at 10–13; Def.'s Reply at 11–16. As before, Defendant cites 5 C.F.R. § 551.423(a)(3). But the regulation still does not appear to be valid under the applicable standard — even after Defendant's opportunity for supplemental briefing — and Defendant therefore cannot rely upon it. Whether Plaintiff is entitled to compensation depends, rather, on FLSA and regulatory standards that the parties have not adequately briefed.[3]

### A. Legal Standards

Under FLSA, "no employer shall employ any of his employees … for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a)(1). That overtime compensation requirement applies not only to work directed by the employer, but work that the employer "suffer[s] or permit[s]." *Id.* § 203(g).

Originally, FLSA exempted federal employees, who were covered instead by separate civil service overtime laws. *Billings v. United States*, 322 F.3d 1328, 1333 (Fed. Cir. 2003). When Congress later extended FLSA to federal employees, *see* Fair Labor Standards Amendments of 1974, Pub. L. No. 93–259, 88 Stat. 55 (1974) (codified in relevant part at 29 U.S.C. § 203(e)(2)(A)), it preserved the parallel regulatory frameworks for federal and non-federal employees. The Department of Labor ("DOL") would continue to administer FLSA with respect to private, State, and local government employees and employers. *See* 29 U.S.C. § 204(a); *see also Skidmore v. Swift & Co.*, 323 U.S. 134, 137–38 (1944); *Dufrene v. Browning-Ferris, Inc.*, 207

---

[3] A large portion of the parties' briefing addresses whether the BFTC is in fact "entry-level training," Def.'s Mot. at 11–13; Pl.'s Opp. at 10–17; Def.'s Reply at 11–14, and whether Plaintiff's employment was "probationary," Def.'s Mot. at 10–11, 17–20; Pl.'s Opp. at 17–21; Def.'s Reply at 15–16. I need not reach those issues of fact and law — or even determine their relevance — until the parties address them under the correct legal standard.

**Appx15**

F.3d 264, 267 (5th Cir. 2000); *Condo v. Sysco Corp.*, 1 F.3d 599, 604 (7th Cir. 1993). The Office of Personnel Management ("OPM") now administers FLSA for most covered federal employees and employers. *See* 29 U.S.C. § 204(f) (providing that, with certain exceptions, "the Director of the Office of Personnel Management is authorized to administer the provisions of this chapter with respect to any individual employed by the United States"); *see also* 5 C.F.R. §§ 551.102(a), 551.103.

In response to concerns that extending FLSA to federal employees would "confuse administration" of FLSA and the civil service laws, *Billings*, 322 F.3d at 1333, Congress charged OPM with administering FLSA "consisten[tly] with the meaning, scope, and application established by the rulings, regulations, interpretations, and opinions of the Secretary of Labor which are applicable in other sectors of the economy." *Id.* (quoting H.R. Rep. No. 93-913, at 28 (1974), *reprinted in* 1974 U.S.C.C.A.N. 2811, 2837–38); *Zumerling v. Devine*, 769 F.2d 745, 750 (Fed. Cir. 1985); *Am. Fed'n of Gov't Emps., AFL-CIO v. Off. of Pers. Mgmt.*, 821 F.2d 761, 769, 770 (D.C. Cir. 1987); *see also* 5 C.F.R. § 551.101(c). When OPM's regulations are inconsistent with DOL's, a court must "determine whether the OPM interpretation of the statute is reasonable, as well as whether any difference between OPM's interpretation and the Labor Department standard is required to effectuate the consistency of application of the provision to both federal and non-federal employees." *Billings*, 322 F.3d at 1334.[4] If the government cannot justify a deviation from DOL's regulations, then the OPM regulation is invalid. *See Am. Fed'n of Gov't Emps.*, 821 F.2d at 771.

To prevail on a motion for summary judgment, the moving party must show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." RCFC 56(a). A material fact must "affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).[5] As such, factual disputes with no bearing on the resolution of the suit

---

[4] The rule of consistency between OPM and DOL regulations does not appear in FLSA or its statutory amendments. It comes from a House committee report. *See Riggs v. United States*, 21 Cl. Ct. 664, 681 (1990). The significance of committee reports for statutory interpretation is a matter of intense debate. *Compare* Robert A. Katzmann, *Judging Statutes* 38 (2014) (referring to committee reports as "authoritative" legislative history that should inform courts' interpretation of statutes), *with* Brett M. Kavanaugh, *Fixing Statutory Interpretation*, 129 Harv. L. Rev. 2118, 2122–24 (2016), *and* John F. Manning, *Why Does Congress Vote on Some Texts but Not Others?*, 51 Tulsa L. Rev. 559, 565–70 (2016). But there is no occasion to sort out that question here. *Billings* adopted the House committee's standard for the validity of OPM regulations, *Billings*, 322 F.3d at 1334, and that holding binds this Court even if the legislative history otherwise would not. *See Crowley v. United States*, 398 F.3d 1329, 1335 (Fed. Cir. 2005).

[5] *Kraft, Inc. v. United States*, 85 F.3d 602, 605 n.6 (Fed. Cir.) ("The precedent interpreting the Federal Rules of Civil Procedure applies with equal force to the comparable Rules of the Court of Federal Claims."), *modified on denial of reh'g*, 96 F.3d 1428 (Fed. Cir. 1996).

are not material. *Id.* When considering a motion for summary judgment under RCFC 56(a), the Court "must … view[] [all evidence] in the light most favorable to the nonmoving party, and all reasonable factual inferences should be drawn in favor of the nonmoving party." *Dairyland Power Coop. v. United States*, 16 F.3d 1197, 1202 (Fed. Cir. 1994).

### B. Section 551.423(a)(3) Impermissibly Departs from DOL Regulations

OPM has provided that — subject to exceptions the parties do not claim are relevant here — "[t]ime spent in … entry level training … outside regular working hours shall not be considered hours of work, provided no productive work is performed during such periods[.]" 5 C.F.R. § 551.423(a)(3); *see also* 5 C.F.R. § 410.402(d) (providing that Section 551.423 "govern[s] overtime pay for employees covered by [FLSA] during training, education, lectures, or conferences").[6] Defendant claims that because BFTC is entry-level training, time spent on the course outside regular working hours does not count as compensable hours of work. Def.'s Mot. at 10–13; Def.'s Reply at 11–16. Plaintiff responds that Section 551.423(a)(3) is inconsistent with DOL regulations on compensation for training and is therefore invalid. Pl.'s Opp. at 13–17.

As I explained in *Plaintiff No. 1*, "[n]o similarly broad exception for entry-level training seems to exist in DOL regulations." 154 Fed. Cl. at 105. "Instead, DOL has exceptions for 'bona fide apprenticeship programs,' *see* 29 C.F.R. § 785.32, and outside-working-hours training by State and local government employees when required by law to obtain a certification, *see* 29 C.F.R. § 553.226(b)." *Id.* Because "DOL's exceptions are distinctly narrower than the OPM exception," Section 551.423(a)(3)'s rule against compensation for entry-level training activities outside working hours is inconsistent with DOL's interpretations of FLSA. *Id.* (citing *Am. Fed'n of Gov't Emps.*, 821 F.2d at 771 (holding that another OPM regulation was inconsistent with DOL's because it defined a FLSA exemption more broadly)).

Because of that departure, the OPM regulation is valid only if it is "reasonable" and "required to effectuate the consistency of application of the provision to both federal and non-federal employees." *Billings*, 322 F.3d at 1334; *Adams v. United States*, 40 Fed. Cl. 303, 307 (1998) ("OPM rules may legitimately deviate from DoL rules if the government can justify a contrary practice."). Otherwise, it is invalid. *See Am. Fed'n of Gov't Emps.*, 821 F.2d 761 at 771.

---

[6] Plaintiff does not claim that BFTC overtime involved "productive work" or that the allegedly uncompensated overtime activities occurred during "regular working hours." *See* 5 C.F.R. § 551.423(a)(3).

OPM's interpretation of FLSA could be reasonable, at least in the abstract. Defendant must also explain, however, why the divergence between OPM and DOL standards is "required to effectuate the consistency of application of the provision to both federal and non-federal employees." *Billings*, 322 F.3d at 1334. Defendant identifies two federal statutes governing federal employment, but neither justifies OPM's categorical rule for entry-level training overtime.

First, Defendant points to the Government Employees Training Act ("GETA"), which rules out overtime compensation for federal employees' training time. *See* 5 U.S.C. § 4109(a)(1) (authorizing the heads of federal agencies to "pay all or a part of the pay (except overtime, holiday, or night differential pay) of an employee of the agency selected and assigned for training under this chapter, for the period of training"); Def.'s Suppl. Br. at 3–4. OPM implemented that prohibition by rule.[7] *See* 5 C.F.R. § 410.402(a) (providing that, with certain exceptions, "an agency may not use its funds, appropriated or otherwise available, to pay premium pay to an employee engaged in training by, in, or through Government or non-government facilities"); 5 C.F.R. § 532.501 (defining "premium pay" to include overtime compensation); *see also* 5 U.S.C. § 4118(a)(8) (authorizing OPM to implement GETA's training provisions). But OPM also provided that GETA — including the prohibition on overtime for training — does not apply to federal employees covered by FLSA. *See* 5 C.F.R. § 410.402(d) ("Regulations governing overtime pay for employees covered by [FLSA] during training … are found in § 551.423 of this chapter. The prohibitions on paying premium pay … are not applicable for the purpose of paying FLSA overtime pay."). Because the parties do not dispute that Plaintiff *is* covered by FLSA, the GETA prohibition on overtime payment for training does not apply.

Defendant argues that because OPM's authorization for overtime pay under FLSA is an exception to the pre-existing statutory prohibition in GETA, it should be interpreted narrowly. Def.'s Suppl. Br. at 5–7. It is not evident what that has to do with entry-level training specifically, considering that OPM has authorized overtime compensation for other kinds of training. *See* 5 C.F.R. § 551.423(a)(2). Once OPM permits overtime for training, excluding *entry-level* training is an arbitrary deviation from FLSA. Defendant has thus failed to explain how its regulation "effectuate[s] the

---

[7] Plaintiff disagrees that GETA prohibits overtime compensation, arguing that while "GETA does not authorize such pay[,] … a lack of authorization is not the same as a prohibition." Pl's. Suppl. Br. at 5. That is not accurate: An agency "literally has no power to act … unless and until Congress confers power upon it," so everything unauthorized is prohibited. *La. Pub. Serv. Comm'n v. FCC*, 476 U.S. 355, 374 (1986). Plaintiff's contrary authority, *Maine Community Health Options v. United States*, holds simply that Congress can create a payment obligation by statute, without a specific appropriation. 140 S. Ct. 1308, 1319–23 (2020).

consistency of application of [relevant labor laws] to both federal and non-federal employees." *Billings*, 322 F.3d at 1334.

Even more fundamentally, Defendant's theory misunderstands the nature of rules and their exceptions. Writing an exception into a rule is simply a way of crafting the underlying rule itself, not a distinct act that needs to be treated in special ways. The presence of an exception in a text "result[s] from the often fortuitous circumstance that the language available to circumscribe a legal rule or principle is broader than the regulatory goals the rule or principle is designed to further." Frederick Schauer, *Exceptions*, 58 U. Chi. L. Rev. 871, 872 (1991). The Supreme Court has accordingly explained that an "exception" is not to be interpreted any differently than other statutory provisions. *BP P.L.C. v. Mayor & City Council of Baltimore*, 141 S. Ct. 1532, 1538–39 (2021) ("This Court has 'no license to give statutory exemptions anything but a fair reading.' … Exceptions and exemptions are no less part of Congress's work than its rules and standards — and all are worthy of a court's respect.") (quoting *Food Mktg. Inst. v. Argus Leader Media*, 139 S. Ct. 2356, 2366 (2019)). Put another way, there is nothing "exceptiony" about an exception that requires reading it more narrowly or broadly than an ordinary reading of its text requires.

That means FLSA and GETA are simply different statutes with different domains, with the border between them established by regulation. *See* 5 C.F.R. § 410.402(d); *see also* Federal Pay Administration Under the Fair Labor Standards Act, 45 Fed. Reg. 85659, 85661 (Dec. 30, 1980) (noting "that the two laws are to be administered separately and independently"). Where FLSA applies, OPM is obligated to hew to DOL's interpretations. *See Billings*, 322 F.3d at 1333. OPM cannot depart from the DOL interpretations simply because a *different* statute with a *different* scope applies in *other* circumstances.

Second, Defendant points out that the Federal Employee Pay Comparability Act ("FEPCA") granted OPM authority to determine what counts as "hours of work" for FLSA-covered employees. Def.'s Suppl. Br. at 4–5; 5 U.S.C. § 5542(c). According to Defendant, OPM's authority to define "hours of work" is an "important difference between the Federal and private sector." *Id.* at 4.

That might have been significant if OPM had chosen to define "hours of work" to exclude Plaintiff's overtime. The problem for the government is that OPM did *not*

**Appx19**

choose to define "hours of work" more narrowly than DOL.[8] On the contrary, when it promulgated Section 551.423(a)(3), OPM made clear its intention to *follow* DOL:

> [W]e have modified our original determination to provide that time spent in training outside regular working hours is compensable as hours of work under the FLSA if certain specific criteria are met. *This change will bring OPM's administration of the FLSA into line with that of the Department of Labor in the private sector and will produce consistency in OPM's administration of the Act.* We have modified the language in § 551.423. [*sic*] and have prepared an FPM letter to provide supplemental instructions in response to the myriad of comments received on this section.

Federal Pay Administration Under the Fair Labor Standards Act, 45 Fed. Reg. at 85661 (emphasis added). Defendant cannot retroactively justify Section 551.423(a)(3) as a departure from DOL's approach when it initially promulgated the regulation to be consistent with DOL's. *SEC v. Chenery Corp.*, 318 U.S. 80, 87 (1943).

Even if Section 551.423(a)(3) does redefine "hours of work," Defendant has more difficulties. The point of OPM's authority to define "hours of work" is "to ensure that no employee receives less pay by reason of" application of FLSA rather than other civil service laws. 5 U.S.C. § 5542(c). The language Defendant cites, in other words, was not a delegation of authority to depart from DOL's interpretations, but a direction to treat civil service protections as a floor when applying FLSA. If anything, that underscores the importance of consistency between DOL's interpretation of FLSA and OPM's implementation of FLSA for federal employees.

In short, Section 551.423(a)(3) creates a categorical rule against overtime for entry-level training outside working hours that is not consistent with DOL's regulations, and Defendant has not justified the departure with any difference between federal and private employment. *See Billings*, 322 F.3d at 1334. The regulation is therefore invalid under the *Billings* analysis. Defendant cannot rely on Section 551.423(a)(3) to obtain dismissal of this case or to refuse to pay overtime to trainees.

### C. Compensability of Training Under FLSA

Given that Defendant cannot rely on Section 551.423(a)(3), what is the standard for payment of overtime for training? On that score, the parties agree —

---

[8] Defendant concedes that point. Def.'s Suppl. Br. at 5 ("In response, OPM added provisions in the FLSA regulations to state that hours of work under Title 5 rules would also qualify as FLSA hours of work, but did not change the FLSA hours of work rules.").

**Appx20**

rightly — that the Court should apply FLSA directly, Pl.'s Suppl. Br. at 9; Def.'s Suppl. Br. at 7, together with all valid and relevant OPM regulations.[9]

Section 551.423(a) reflects OPM's effort to implement FLSA's rules for training-related compensation. Leaving aside the invalid carve-out for entry-level training, the general rule for when "[t]ime spent in training outside regular working hours" can be compensated appears in Section 551.423(a)(2) — which the parties have barely mentioned. *Almanza v. United States*, 935 F.3d 1338–39. As explained in *Plaintiff No. 1*, however, that provision may not be valid either because it shifts the burden of proving compensability from the employer to the employee. 154 Fed. Cl. at 103–05.

If OPM has not validly regulated in the field, FLSA's underlying standards control. As mentioned above, FLSA requires employers to pay for their employees' work. 29 U.S.C. §§ 206(a), 207(a). The statute does not define "work," but has been held to cover "trainees, beginners, apprentices, or learners if they are employed to work for an employer for compensation." *Walling v. Portland Terminal Co.*, 330 U.S. 148, 151 (1947). FLSA does not, however, cover true students who "without any express or implied compensation agreement, might work for their own advantage on the premises of another." *Id.* at 152. Since *Walling*, courts have sometimes interpreted FLSA to distinguish between individuals' activities in their capacity as employees (which must be compensated as work) and their activities as students (which need not be compensated). *Ballou v. Gen. Elec. Co.*, 433 F.2d 109, 111–12 (1st Cir. 1970); *Bienkowski v. Ne. Univ.*, 285 F.3d 138, 141 (1st Cir. 2002); *Chao v. Tradesman Int'l, Inc.*, 310 F.3d 904, 910 (6th Cir. 2002); *see Almanza v. United States*, 935 F.3d 1332, 1340–41 (Fed. Cir. 2019) (finding that activities done after hours primarily for employees' learning and development are not "hours of work").[10]

Because Defendant briefed its motion under the wrong legal standard, the parties have not fully developed the correct one. Nor is it clear how the correct test applies to the facts of Plaintiff's training. I therefore cannot conclude that Defendant

---

[9] The parties also appear to agree that DOL's regulations might be persuasive authority in interpreting FLSA. Pl.'s Suppl. Br. at 10; Def.'s Suppl. Br. at 7. DOL's authority has been displaced by statute in federal employment. 29 U.S.C. § 204(f). Nor are DOL's regulations binding, even on their own terms. *See* 29 C.F.R. § 785.2. But "while not controlling upon the courts by reason of their authority," they "do constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance." *Skidmore*, 323 U.S. at 140. DOL regulations might be especially persuasive if — as discussed above — OPM intended to follow them but simply miswrote its own regulations. Whether any *particular* DOL regulation is in fact persuasive can wait for further proceedings.

[10] Contrary to Defendant's argument, Def.'s Mot. at 17–20, those cases do not create a special compensation rule for training undergone by "probationary" employees, except to the extent that an individual's probationary status sheds light on whether he is an employee doing compensable work. *See, e.g.*, *Bienkowski*, 285 F.3d at 141.

has established that there is no dispute of material fact or that Defendant is entitled to judgment as a matter of law. RCFC 56(a).

**<u>CONCLUSION</u>**

For the foregoing reasons, Defendant's Motion for Summary Judgment (ECF 48) is **DENIED**. The parties are **ORDERED** to submit a status report proposing further proceedings no later than **August 25, 2022.**

Pursuant to the Court's March 31, 2021 Amended Protective Order (ECF 53), this Opinion has been issued under seal. The transcript of the August 18, 2022 hearing is under seal as well. The parties shall have two weeks to propose redactions and, accordingly, shall file notice of their proposed redactions no later than **August 9, 2022**. To aid the Court's evaluation of the proposed redactions and in light of the "presumption of public access to judicial records," *Baystate Techs., Inc. v. Bowers*, 283 F. App'x 808, 810 (Fed. Cir. 2008) (per curiam), each party shall file a memorandum explaining why redactions are necessary for each item of information for which a redaction is proposed.

**IT IS SO ORDERED.**

s/ Stephen S. Schwartz
STEPHEN S. SCHWARTZ
Judge

- 11 -

**Appx22**